**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| **H-W Technology L.C.,** | **CIVIL ACTION NO.** |
| Plaintiff, | |
| **v.** | |
| (1)    **Apple Inc.;** | |
| (2)    **Research In Motion Limited;** | |
| (3)    **Research In Motion Corporation;** | |
| (4)    **Amazon.com, Inc.;** | |
| (5)    **Amazon Payments, Inc.;** | **JURY TRIAL DEMANDED** |
| (6)    **HTC Corporation;** | |
| (7)    **HTC America, Inc.;** | |
| (8)    **LG Electronics, Inc.** | |
| (9)    **LG Electronics U.S.A., Inc.;** | |
| (10)  **eBay, Inc.;** | |
| (11)  **Hotels.com, L.P.;** | |
| (12)  **Google, Inc.;** | |
| (13)  **Expedia, Inc.;** | |
| (14)  **Priceline.com LLC;** | |
| (15)  **Orbitz Worldwide, Inc.;** | |
| (16)  **Buy.com Inc.;** | |
| (17)  **Motorola Solutions, Inc.;** | |
| (18)  **Motorola Mobility, Inc.;** | |
| (19)  **Samsung Electronics Co., Ltd.;** | |
| (20)  **Samsung Electronics America, Inc.;** | |
| (21)  **Samsung Telecommunications America, LLC;** | |
| (22)  **Kayak Software Corporation d/b/a Kayak.com;** | |
| (23)  **Microsoft Corporation;** | |
| (24)  **Nokia Corporation;** | |
| (25)  **Nokia, Inc.;** | |
| (26)  **Sony Ericsson Mobile Communications AB;** | |
| (27)  **Sony Ericsson Mobile Communications (USA), Inc.;** | |
| (28)  **Kyocera Corporation;** | |
| (29)  **Kyocera International, Inc.;** | |
| (30)  **Kyocera Communications, Inc.;** | |
| (31)  **Kyocera America, Inc.; and** | |
| (32)  **Verizon Communications, Inc.** | |
| Defendants. | |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff H-W Technologies, LLC (together "H-W" or "Plaintiff"), as and for its Complaint against Apple Inc.; Research In Motion Corporation; Research In Motion Limited; Amazon.com, Inc.; Amazon Payments, Inc.; HTC Corporation; HTC America, Inc.; LG Electronics, Inc.; LG Electronics U.S.A., Inc.; eBay Inc.; Hotels.com, L.P.; Google, Inc.; Expedia, Inc.; Priceline.com LLC; Orbitz Worldwide, Inc.; Buy.com Inc.; Motorola Solutions, Inc.; Motorola Mobility, Inc.; Samsung Electronics Co., Ltd.; Samsung Electronics America, Inc.; Samsung Telecommunications America, LLC; Kayak.com; Microsoft Corporation; Nokia Corporation; Nokia, Inc., Sony Ericsson Mobile Communications AB; Sony Ericsson Mobile Communications, Inc.; Kyocera Corporation, Kyocera International, Kyocera Communications, Inc.; Kyocera America, Inc.; and Verizon Communications, Inc. (collectively "Defendants"), demand a trial by jury and allege as follows:

## PARTIES

1.      Plaintiff H-W Technology, L.C. is a Texas corporation having a principal place of business at 4601 13TH Street, Lubbock, TX 79416.

2.      On information and belief, Defendant Apple Inc. is incorporated under the laws of California with its principal place of business at 1 Infinite Loop, Cupertino, CA 95014.  This defendant is registered to do business in Texas and has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201 as its agent for service of process.  Apple Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

3.      On information and belief, Defendant Research In Motion Limited is a Canadian Corporation with its principal place of business at 259 Phillip Street, Waterloo, Ontario, N2L 3W8 Canada.  On information and belief, Research In Motion Limited is a nonresident of Texas

who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process in this state.  On information and belief, Research In Motion Limited resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b).  This proceeding arises, in part, out of business done in this state.  Research In Motion Limited may be served with process in Canada pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).  Research In Motion Limited regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

4.     On information and belief, Defendant Research In Motion Corporation is incorporated under the laws of Delaware with its principal place of business at 122 West John Carpenter Parkway, Suite 430, Irving, TX 75039.  This defendant has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201 as its agent for service of process. Research In Motion Corporation regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.  On information and belief, Research In Motion Corporation is a wholly-owned subsidiary of Research In Motion Limited and serves as a representative of RIM Ltd. for purposes of conducting business in the United States.

5.     On information and belief, Defendant Amazon.com, Inc. is a corporation organized and existing under the laws of the State of Delaware with their principal place of business at 1200 12th Avenue, South, Suite 1200, Seattle, WA 98144.  This defendant has appointed Corporation Service Company, 1013 Centre Road, Wilmington, DE, 19805 as its agent for service of process.  Amazon.com, Inc. regularly conducts and transacts business in

Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

6.     On information and belief, Defendant Amazon Payments, Inc. is incorporated under the laws of Delaware with its principal place of business at 15600 NE 8th Street, Suite B1 #975, Bellevue, WA 98008.  This defendant is registered to do business in Texas and has appointed Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701 as its agent for service of process.  Amazon Payments, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

7.     On information and belief, Defendant HTC America, Inc. is incorporated under the laws of Washington with its principal place of business at 13920 SE Eastgate Way, Suite 400 Bellevue, Washington 98005.  This defendant is registered to do business in Texas and has appointed National Registered Agents, Inc., 16055 Space Center Blvd., Suite 235, Houston, TX 77062 as its agent for service of process.  Defendant HTC America, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

8.     On information and belief, Defendant HTC Corporation is a Republic of Taiwan corporation with its principal place of business at 23 HSin Hua Rd., Taoyuan, 330, Taiwan.  On information and belief, HTC Corporation is a nonresident of Texas who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process in this state.  On information and belief, HTC Corporation resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b).  This proceeding arises, in part, out of

business done in this state.  HTC Corporation may be served with process in Korea pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).  HTC Corporation regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

9.     On information and belief, Defendant LG Electronics, Inc. is a Republic of Korea limited company with its principal place of business in LG Twin Towers, 20 Yeouido-dong, Yeoungdeungpo-gu, Seoul, South Korea.  On information and belief, LG Electronics, Inc. is a nonresident of Texas who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process in this state.  On information and belief, LG Electronics, Inc. resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b).  This proceeding arises, in part, out of business done in this state.  LG Electronics, Inc. may be served with process in Korea pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).  LG Electronics, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

10.    On information and belief, Defendant LG Electronics U.S.A., Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, NJ 07632.  This defendant is registered to do business in Texas and has appointed United States Corporation Company, 211 East 7th Street, Suite 620, Austin, TX 78701 as its agent for service of process.  LG Electronics U.S.A., Inc.

regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

11.     On information and belief, Defendant eBay Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 2145 Hamilton Ave San Jose, CA 95125.  This defendant is registered to do business in Texas and has appointed National Registered Agents, Inc., 16055 Space Center Blvd., Suite 235, Houston TX 77062 as its agent for service of process.  eBay Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

12.     On information and belief, Defendant Hotels.com, L.P. is incorporated under the laws of Texas with its principal place of business at 10440 N. Central Expressway, Ste. 400 Dallas, TX 75231.  This defendant is registered to do business in Texas and has appointed National Registered Agents, Inc., 16055 Space Center Blvd., Suite 235, Houston TX 77062 as its agent for service of process.  Hotels.com, L.P. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

13.     On information and belief, Defendant Google, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, CA 94043.  This defendant is registered to do business in Texas and has appointed Corporation Service Company d/b/a CSC Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701 as its agent for service of process.  Google, Inc. regularly conducts and transacts business in Texas, throughout the United

States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

14.     On information and belief, Defendant Expedia, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3150 139th Avenue SE, Bellevue, WA 98005.  This defendant is registered to do business in Texas and has appointed National Registered Agents, Inc., 16055 Space Center Blvd., Suite 235, Houston TX 77062 as its agent for service of process.  Expedia, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

15.     On information and belief, Defendant Priceline.com LLC is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 800 Connecticut Ave., Norwalk, CT 06854.  This defendant has appointed Lexis Document Services, Inc., 2711 Centerville Road, Suite 400, Wilmington DE 19808 as its agent for service of process.  Priceline.com LLC regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

16.     On information and belief, Defendant Orbitz Worldwide, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 500 W. Madison St., Suite 1000, Chicago, IL 60661.  This defendant has appointed Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808 as its agent for service of process.  Orbitz Worldwide, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

17.     On information and belief, Defendant Buy.com Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 85 Enterprise Suite 100, Aliso Viejo, CA 92656.  This defendant has appointed Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808 as its agent for service of process.  Buy.com Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

18.     On information and belief, Defendant Motorola Solutions, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1303 E Algonquin Road, Schaumburg, IL 60196.  This defendant has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201 as its agent for service of process.  Motorola Solutions, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

19.     On information and belief, Defendant Motorola Mobility, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1303 E Algonquin Road, Schaumburg, IL 60196.  This defendant has appointed CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, TX 75201 as its agent for service of process.  Motorola Mobility, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

20.     On information and belief, Defendant Samsung Electronics Co., Ltd. ("Samsung Ltd.") is a Republic of Korea limited company with its principal place of business in 250, 2-ga, aepyong-ro, Jung-gu, Seoul 100-742, Korea.  On information and belief, Samsung Electronics

Co., Ltd. is a nonresident of Texas who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process in this state. On information and belief, Samsung Electronics Co., Ltd. resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b).  This proceeding arises, in part, out of business done in this state.  Samsung Electronics Co., Ltd. may be served with process in Korea pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).  Samsung Electronics Co., Ltd. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

21.     On information and belief, Defendant Samsung Electronics America, Inc., a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 105 Challenger Road Ridgefield Park, NJ 07660.  This defendant has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its agent for service of process.  Samsung Electronics America, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

22.     Samsung Telecommunications America, L.L.C. is a Texas limited liability company with its principal place of business in Richardson, Texas.  This defendant has appointed Prentice Hall Corporation System, 211 E. 7th Street, Suite 620, Austin, Texas 78701 as its agent for service of process.  Samsung LLC regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

23.     On information and belief, Defendant Kayak.com, a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 55 North Water Street, Suite 1. Norwalk, CT 06854.  This defendant has appointed Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808 as its agent for service of process.  Kayak.com regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

24.     On information and belief, Defendant Microsoft Corporation is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 1 Microsoft Way, Redmond, WA 98052.  This defendant is registered to do business in Texas and has appointed Corporation Service Company, 211 East 7th Street, Suite 620, Austin, TX 78701 as its agent for service of process.  Microsoft Corporation regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

25.     On information and belief, Nokia Corporation is a Finnish corporation having its principal place of business at Keilalahdentie 2-4, FI-02150 Espoo, Finland.  On information and belief, Nokia Corporation is a nonresident of Texas who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process in this state.  On information and belief, Nokia Corporation resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b).  This proceeding arises, in part, out of business done in this state.  Nokia Corporation may be served with process in Finland pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).  Nokia Corporation regularly

conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

26. On information and belief, Nokia, Inc. is a Delaware corporation having its principal place of business at 6000 Connection Drive, Irving, Texas 75039. This defendant is registered to do business in Texas and has appointed National Registered Agents, Inc., 16055 Space Center, Suite 235, Houston, TX 77062 as its agent for service of process. Nokia, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

27. On information and belief, Sony Ericsson Mobile Communications AB is a Swedish corporation having its principal place of business at Nya Vattentornet, SE-221 88 Lund, Sweden. On information and belief, Sony Ericsson Mobile Communications AB is a nonresident of Texas who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process in this state. On information and belief, Sony Ericsson Mobile Communications AB resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b). This proceeding arises, in part, out of business done in this state. Sony Ericsson Mobile Communications AB may be served with process in Sweden pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969). Sony Ericsson Mobile Communications AB regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

28. On information and belief, Sony Ericsson Mobile Communications (USA), Inc. is

a Delaware corporation having its principal place of business at 7001 Development Drive, Research Triangle Park, North Carolina 27709.   On information and belief, Sony Ericsson Mobile Communications (USA), Inc. is registered to do business in Texas and has appointed Capitol Corporate Services, Inc., 800 Brazos, Suite 400, Austin, TX 78701 as its agent for service of process.   Sony Ericsson Mobile Communications (USA), Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

29.     On information and belief, Defendant Kyocera Corporation is a Japanese corporation with its principal place of business at 6 Takeda Tobadono-cho, Fushimi-ku, Kyoto, 612-8501, Japan.   On information and belief, Kyocera Corporation is a nonresident of Texas who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process in this state.   On information and belief, Kyocera Corporation resides in this jurisdiction within the meaning of 28 U.S.C. § 1400(b).   This proceeding arises, in part, out of business done in this state.   Kyocera Corporation may be served with process in Korea pursuant to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, Article 1, November 15, 1965 T.I.A.S. No. 6638, 20 U.S.T. 361 (U.S. Treaty 1969).     Kyocera Corporation regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

30.     On information and belief, Kyocera International, Inc. is a California corporation having its principal place of business at 8611 Balboa Avenue, San Diego, California 92123.   This defendant has appointed Corporation Service Company, 2730 Gateway Oaks Drive, Suite 100, Sacramento, CA 95833 as its agent for service of process.   Kyocera International, Inc. regularly

conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

31.    On information and belief, Kyocera Communications, Inc. is a Delaware corporation having its principal place of business at 10300 Campus Point Drive, San Diego, California 92121.  On information and belief, Kyocera Communications, Inc. is registered to do business in the State of Texas and has appointed Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, TX 78701 as its agent for service of process.  Kyocera Communications, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

32.    On information and belief, Kyocera America, Inc. is a California corporation having its principal place of business at 8611 Balboa Avenue, San Diego, California 92123.  On information and belief, Kyocera International, Inc. is registered to do business in the State of Texas and has appointed Prentice Hall Corp System, 211 E. 7th Street, Suite 620, Austin, TX 78701 as its agents for service of process.  Kyocera America, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

33.    On information and belief, Defendant Verizon Communications, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at the Verizon Building, 140 West Street, New York, NY 10007.  Verizon Communications, Inc. has appointed The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as its agent for service of process.  Verizon

Communications, Inc. regularly conducts and transacts business in Texas, throughout the United States, and within the Northern District of Texas, itself and/or through one or more subsidiaries, affiliates, business divisions, or business units.

## JURISDICTION AND VENUE

34.     This action arises under the Patent Laws of the United States, namely, 35 U.S.C. §§ 1 et seq. This Court has exclusive subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

35.     Venue is proper in this district under 28 U.S.C. §§ 1391(b)(2) and (c) and/or 1400(b).  On information and belief, each Defendant has transacted business in this district, and has committed acts of patent infringement in this district, including via their websites.

36.     On information and belief, Defendants are subject to this Court's general and specific personal jurisdiction because: each Defendant has minimum contacts within the State of Texas and the Northern District of Texas, including via their websites, pursuant to due process and/or the Texas Long Arm Statute, each Defendant has purposefully availed itself of the privileges of conducting business in the State of Texas and in the Northern District of Texas; each Defendant regularly conducts and solicits business within the State of Texas and within the Northern District of Texas; and H-W's causes of action arise directly from Defendants' business contacts and other activities in the State of Texas and in the Northern District of Texas.

37.     More specifically, each Defendant, directly and/or through intermediaries, ships, distributes, offers for sale, sells, and/or advertises (including the provision of interactive web pages) its products and services in the United States, the State of Texas, and the Northern District of Texas.  On information and belief, each Defendant has committed patent infringement in the State of Texas and in the Northern District of Texas.  Each Defendant solicits customers in the State of Texas and in the Northern District of Texas.  Each Defendant has customers who are

residents of the State of Texas and the Northern District of Texas and who each use respective Defendants' products and services in the State of Texas and in the Northern District of Texas.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 7,525,955

38.     H-W is the owner of all rights, title and interest to United States Patent No. 7,525,955 ("the '955 Patent") entitled "Internet Protocol (IP) Phone with Search and Advertising Capability." The '955 Patent was issued on April 28, 2009 after a full and fair examination by the United States Patent and Trademark Office. The application leading to the '955 Patent was filed on March 17, 2005 and benefits from a priority date of March 19, 2004.

39.     The '955 Patent is generally directed to novel, unique and non-obvious systems and methods of using a multi-convergence device, including phones commonly referred to as "smartphones", which are able to converge voice and data within a single terminal, and which allow users of such devices via domain specific applications to receive information and offers from merchants and to complete a transaction with one of said merchants without having to generate a voice call.

40.     On information and belief, Defendant Apple Inc. has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, offering to sell, selling or importing products and methods that utilize, in whole or in part, a multi-convergence device having a domain specific application that allows users to complete a merchant transaction without the need to generate a voice call. On information and belief, an example of an Apple Inc. product that infringes the '955 Patent includes, but is not limited to, the Apple iPhone. Defendant Apple Inc. is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

41.     On information and belief, Defendants Research In Motion Limited and Research In Motion Corporation have been and are now infringing the '955 Patent in the State of Texas, in

this judicial district, and elsewhere in the United States by making, using, offering to sell, selling or importing products and methods that utilize, in whole or in part, a multi-convergence device having a domain specific application that allows users to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of a Research In Motion Limited and Research In Motion Corporation product that infringes the '955 Patent includes, but is not limited to the Blackberry Torch product.  Defendants Research In Motion Limited and Research In Motion Corporation are thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

42.     On information and belief, Defendants Amazon.com, Inc. and Amazon Payments, Inc. have been and now are infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of an Amazon.com, Inc. and Amazon Payments, Inc. product that infringes the '955 Patent includes, but is not limited to its Amazon smartphone application which allows a smartphone user to connect to an Amazon.com server and complete a merchant transaction without the need to generate a voice call.  Defendants Amazon.com, Inc. and Amazon Payments, Inc. are thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

43.     On information and belief, Defendants HTC America, Inc. and HTC Corporation have been and now are infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for utilizing a multi-convergence device having a domain specific application that allows users to complete a merchant transaction without the

need to generate a voice call.  On information and belief, and example of an HTC America, Inc. and HTC Corporation product that infringes the '955 Patent includes, but not limited to the HTC Thunderbolt product.  Defendants HTC America, Inc. and HTC Corporation are thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

44.     On information and belief, Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. have been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for utilizing a multi-convergence device with a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of an LG Electronics, Inc. and LG Electronics U.S.A., Inc. product that infringes the '955 Patent includes, but is not limited to the LG G2x product.  Defendants LG Electronics, Inc. and LG Electronics U.S.A., Inc. are thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

45.     On information and belief, Defendant eBay Inc. has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of an eBay Inc. product that infringes the '955 Patent includes, but is not limited to its eBay smartphone application that allows a smartphone to connect to an eBay server to complete a merchant transaction without the need to generate a voice call.  Defendant eBay Inc. is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

46.     On information and belief, Defendant Hotels.com, L.P. has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the

United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of a Hotels.com, L.P. product that infringes the '955 Patent includes, but is not limited to the Hotels.com smartphone application product which allows a smartphone user to connect to a Hotels.com server to complete a merchant transaction without the need to generate a voice call.  Defendant Hotels.com, L.P. is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

47.     On information and belief, Defendant Google, Inc. has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of a Google, Inc. product that infringes the '955 Patent includes, but is not limited to the Android application store which provides an on-line marketplace for allowing a smartphone user to complete a merchant transaction without the need to generate a voice call.  Defendant Google, Inc. is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

48.     On information and belief, Defendant Expedia, Inc. has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of an Expedia.com product that infringes the '955 Patent includes, but is

not limited to the Expedia.com smartphone application product which allows a smartphone user to connect to an Expedia.com server to complete a merchant transaction without the need to generate a voice call.  Defendant Expedia.com, L.P. is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

49.     On information and belief, Defendant Priceline.com LLC has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of a Priceline.com LLC product that infringes the '955 Patent includes, but is not limited to the Priceline.com smartphone application product which allows a smartphone user to connect to a Priceline.com, LLC server to complete a merchant transaction without the need to generate a voice call.  Defendant Priceline.com LLC is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

50.     On information and belief, Defendant Orbitz Worldwide, Inc. has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of an Orbitz Worldwide, Inc. product that infringes the '955 Patent includes, but is not limited to the Orbitz.com smartphone application product which allows a smartphone user to connect to an Orbitz Worldwide, Inc. server to complete a merchant transaction without the need to generate a voice call.  Defendant Orbitz Worldwide, Inc. is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

51.     On information and belief, Defendants Motorola Solutions, Inc. and Motorola Mobility, Inc. (" Defendants Motorola") have been and are now infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of a Defendants Motorola product that infringes the '955 Patent, includes but is not limited to the Droid X product.  Defendants Motorola are thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

52.     On information and belief, Defendants Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC ("Defendants Samsung") have been and are now infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of a Defendants Samsung product that infringes the '955 Patent includes but is not limited to the Samsung Galaxy S product.  Defendants Samsung are thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

53.     On information and belief, Defendant Kayak.com has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and

belief, an example of a Kayak.com product that infringes the '955 Patent includes but is not limited to the Kayak.com smartphone application which allows a smartphone user to access a Kayak.com server to complete a merchant transaction without the need to generate a voice call. Defendant Kayak.com is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

54.     On information and belief, Defendant Microsoft Corporation has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device to complete a merchant transaction without the need to generate a voice call.   On information and belief, multiple Microsoft Corporation products including, but not limited to the Samsung Focus Windows 7 product, use systems and methods for allowing a multi-convergence device to complete a merchant transaction without the need to generate a voice call.   Defendant Microsoft Corporation is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

55.     On information and belief, Defendants Kyocera Corporation; Kyocera International; Kyocera Communications and Kyocera America, Inc. ("Defendants Kyocera") have been and now are infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.   On information and belief, an example of a Defendants Kyocera product that infringes the '955 Patent includes but is not limited to the Kyocera Echo product.   Defendants Kyocera are thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

56.     On information and belief, Defendant Verizon Communications, Inc. has been and now is infringing the '955 Patent in the State of Texas, in this judicial district, and elsewhere in the United States by making, using, importing, selling or offering to sell products that have systems and/or methods for allowing a multi-convergence device utilizing a domain specific application to complete a merchant transaction without the need to generate a voice call.  On information and belief, an example of a Verizon Communications, Inc. product that infringes the '955 Patent includes but is not limited to the VCast application which allows a smartphone user to connect to a VCast application server complete a merchant transaction without the need to generate a voice call.  Defendant Verizon Communications, Inc. is thus liable for infringement of the '955 Patent pursuant to 35 U.S.C. § 271.

57.     To the extent that facts learned in discovery show that Defendants' infringement of the '955 Patent is or has been willful, H-W reserves the right to request such a finding at time of trial.

58.     As a result of these Defendants' infringement of the '955 Patent, H-W has suffered monetary damages in an amount not yet determined, and will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

59.     Unless a permanent injunction is issued enjoining these Defendants and their agents, servants, employees, representatives, affiliates, and all others acting on or in active concert therewith from infringing the '955 Patent, H-W will be greatly and irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, H-W respectfully requests that this Court enter:

A.      A judgment in favor of H-W that Defendants have infringed the '955 Patent, and that such infringement was willful;

B.      A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringing the '955 Patent;

C.      A judgment and order requiring Defendants to pay H-W its damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '955 Patent as provided under 35 U.S.C. § 284;

D.      An award to H-W for enhanced damages resulting from the knowing, deliberate, and willful nature of Defendants' prohibited conduct with notice being made at least as early as the date of the filing of this Complaint, as provided under 35 U.S.C. § 284;

E.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to H-W its reasonable attorneys' fees; and

F.      Any and all other relief to which H-W may show itself to be entitled.

## DEMAND FOR JURY TRIAL

H-W, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: March 30, 2011                          Respectfully submitted,

                                               **H-W TECHNOLOGY, L.C.**


                                               /s/ Winston O. Huff
                                               _____

                                               Winston O. Huff, Attorney in Charge
                                               State Bar No. 24068745
                                               Arthur I. Navarro
                                               State Bar No. 00792013
                                               Navarro Huff, PLLC
                                               302 N. Market, Suite 450
                                               Dallas, TX 75202
                                               214.749.1220 (Firm)
                                               214.749.1233 (Fax)
                                               whuff@navarrohuff.com

                                               ATTORNEYS FOR PLAINTIFF
                                               H-W TECHNOLOGY, L.C.

## CERTIFICATE OF FILING

I hereby certify that on March 30, 2011, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.


Respectfully submitted,


/s/ Winston O. Huff

Winston O. Huff, Attorney in Charge
State Bar No. 24068745
Arthur I. Navarro
State Bar No. 00792013
Navarro Huff, PLLC
302 N. Market, Suite 450
Dallas, TX 75202
214.749.1220 (Firm)
214.749.1233 (Fax)
whuff@navarrohuff.com

ATTORNEYS FOR PLAINTIFF
H-W TECHNOLOGY, L.C.

# EXHIBIT A

US007525955B2

(12) **United States Patent**
Velez-Rivera et al.

(10) **Patent No.: US 7,525,955 B2**
(45) **Date of Patent: Apr. 28, 2009**

(54) **INTERNET PROTOCOL (IP) PHONE WITH SEARCH AND ADVERTISING CAPABILITY**

(75) Inventors: **Carlos J. Velez-Rivera**, Mayaguez, PR (US); **Inaki Olivares-Arocho**, Mayaguez, PR (US); **Jose L. Cruz-Rivera**, Rincon, PR (US)

(73) Assignee: **Commuca, Inc.**, Erie, CO (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 511 days.

(21) Appl. No.: **11/082,361**

(22) Filed: **Mar. 17, 2005**

(65) **Prior Publication Data**

US 2005/0207432 A1     Sep. 22, 2005

**Related U.S. Application Data**

(60) Provisional application No. 60/554,548, filed on Mar. 19, 2004, provisional application No. 60/554,544, filed on Mar. 19, 2004.

(51) **Int. Cl.**
*H04L 12/66*     (2006.01)

(52) **U.S. Cl.** .................. **370/352**; 709/219; 379/114.13

(58) **Field of Classification Search** ................. 370/352; 709/219; 379/114.13
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 2002/0133396 A1 | 9/2002 | Barnhart |
| 2003/0004937 A1 | 1/2003 | Salmenkaita |
| 2003/0136835 A1 | 7/2003 | Chung et al. |

*Primary Examiner*—Quynh H Nguyen
(74) *Attorney, Agent, or Firm*—Ruben C. DeLeon

(57) **ABSTRACT**

A software platform in an Internet Protocol (IP) phone having the ability to be used with different communication infrastructures such as broadband, wireless communication and Plain Old Telephone System (POTS) service. Further, the software platform in the IP phone has the ability to be used with different applications operating on the IP phone. Further, the IP phone has the ability to perform additional functionality than traditional Public Switched Telephone Network (PSTN) phones, such as searches and advertising, given its ability to converge voice and data within a single terminal.

**24 Claims, 27 Drawing Sheets**





Figure 1



Figure 2

Figure 3

300



**Figure 4**



**Figure 5**



Figure 6





**Figure 7**

700

701 — Define requirement specifications for the application of interest

702 — Identify features from common converged communications base services layer to be incorporated into domain specific application

703 — Enable features identified

704 — Build client interface so that the extra functionality developed for domain-specific application can collaborate with the previously available base services layer

705 — Implement Extra Functionality for Domain Specific Application

Figure 8



800

801

Identify differences in Operating
System Constructs and Identify
New Hardware Drivers Needed

802

Build Operating System Layer
Adapter Module and Implement
New Hardware Drivers



Figure 9

900

901 — Build Communications Infrastructure Services Adapter Module

902 — Configure the Communications Infrastructure Services Layer to Accept New Adapter Module



Figure 10

Figure 11



**Figure 12**



**Figure 13**



**Figure 14**





Figure 15



Figure 16

**Figure 17**



**Figure 18**



**Figure 19**





Figure 20

**Figure 21**



2100

2101 — Receive a command to perform a contextual search

2102 — Handle query by the client protocol engine and submit to the TADS server protocol engine

2103 — Receive query results providing baseline information and premium service listings

2104 — Log all actions associated with the served transaction

2105 — Select baseline or premium services.

**Figure 22**



2200

2201
Select query result

2202
Store the content information associated with the query result as a local entry in the fixed telephony system's directory

2203
Log all actions associated with the served transaction

**Figure 23**



2300

2301
Select query's result "one-touch" feature

2302
Initiate a call via the corresponding infrastructure

2303
Log all actions associated with the served transaction

Case 3:12-cv-04045-JCS   Document 3   Filed 03/30/11   Page 51 of 71

**Figure 24**



2400

2401 — Provide content for advertising services

2402 — Define distribution and level of exposure for advertisements

2403 — Log all actions associated with the served transaction

**Figure 25**

2500



2501 — Enable no contact call service

2502 — Select query results with no contact feature

2503 — Manage request by prompting end-user to provide information required by merchant

2504 — Provide requested information via input interface

2505 — Transfer information to merchant without further end-user intervention

2506 — Log all actions associated with the served transaction

2507 — Perform service

**Figure 26**





Figure 27

US 7,525,955 B2

1

# INTERNET PROTOCOL (IP) PHONE WITH SEARCH AND ADVERTISING CAPABILITY

## PRIORITY BENEFIT AND CROSS REFERENCE TO RELATED APPLICATIONS

This application is related to the following commonly owned copending U.S. Patent Applications:

Provisional Application Ser. No. 60/554,548, "Method For Rapid Development Of Differentiated Converged Communications Terminals Based On A Flexible Software Platform", filed Mar. 19, 2004, and claims the benefit of its earlier filing date under 35 U.S.C. 119(e).

Provisional Application Ser. No. 60/554,544, "Flexible Software Platform For Differentiated Converged Communications Terminals", filed Mar. 19, 2004, and claims the benefit of its earlier filing date under 35 U.S.C. 119(e).

## TECHNICAL FIELD

The present invention relates to the field of an internet phone system, and more particularly to an Internet Protocol ("IP") phone with search and advertising capability that includes a platform adaptable to be used with different applications running on the IP phone as well as adaptable to be used with different communication infrastructures.

## BACKGROUND INFORMATION

Recently, multimedia communication in which voice, video and data information are transmitted and received using the Internet Protocol (IP) is carried over an IP network. A phone, referred to herein as an "IP phone" or more generally as a "converged communications terminal" may be connected directly to the IP network over which a multimedia phone exchange system can be constructed. An IP phone is a telephone which can operate and execute voice communication in the same way as conventional telephones either via a Plain Old Telephone System (POTS) or an IP network. Further, the IP phone can use the IP network for data applications. For example, IP phones may be connected to an IP network, such as a local area network, in an office environment thereby using the network as a private telephone network circuit and as a data exchange network. In another example, IP phones may use a wide area network, e.g., Internet, to communicate with other properly configured IP phones for data-voice exchanges. In another example, IP phones may use a data network for transactional data applications and the POTS network for voice.

IP phones currently have features similar to those found in traditional public switched telephone network (PSTN) phones such as call forwarding, call waiting, conference calls and so forth. Enhancements to these feature sets have been slow in coming, as market leaders in the "Voice over IP" (VoIP) telephony field have pursued an incremental approach to their product offerings, particularly because of the lack of computing power available in VoIP platforms. Currently, VoIP platforms may have to be specifically designed for a target market area and software application operating on the IP phone. For example, a unique VoIP platform may have to be developed to operate a software application used to allow the user of the IP phone to vote on an election. A separate unique VoIP platform may have to be developed to operate a hospitality application used for saving voice messages, issuing wake-up calls, scheduling room service, tracking complaints, etc. By having to design and implement separate VoIP

2

platforms for each application operating on the IP phone, the cost in operating different applications on an IP phone may be prohibitive.

Furthermore, current IP phones are not adaptable to be used with different communication infrastructures, such as broadband, wireless communication and POTS service. For example, current IP phones may not be able to connect to a broadband modem to access a software application while also being connected to a POTS line to access voice. By not being able to access multiple different communication infrastructures concurrently, the user of an IP phone is limited on the uses of the IP phone.

Further, current users of an IP phone do not have the ability to perform searches such as in a contextual advertisement space on the IP phone. 27% of all on-line searches are aimed at finding local services or businesses, while 2 out of 3 small and medium size businesses still rely heavily on the phone for sales leads. There appears to be a strong demand for allowing the user of an IP phone to locate a business with ease such as in a contextual advertisement space while at the same time allowing the businesses to target advertisements to consumers with broadband connections to the home for data and either VoIP or POTS service for voice.

Therefore, there is a need in the art for an IP phone configured with a VoIP platform that can support different applications operating on the IP phone. Further, there is a need in the art for an IP phone that is adaptable to be used concurrently with various communication infrastructures. Further, there is a need in the art for an IP phone with the capability of implementing features beyond those found in traditional PSTN phones, such as the ability to perform searches and advertising.

## SUMMARY

The problems outlined above may at least in part be solved in some embodiments by a software platform in an IP phone having the ability to be used with different communication infrastructures such as broadband, wireless communication, POTS service. Further, the software platform in the IP phone has the ability to be used with different applications operating on the IP phone. Further, the IP phone has the ability to perform additional functionality than traditional PSTN phones, such as searches and advertising, given its ability to converge voice and data within a single terminal as described herein.

In one embodiment of the present invention, a system comprises an Internet Protocol (IP) phone coupled to a server where the IP phone is configured to receive contextual information from the server. The IP phone may comprise a memory unit operable for storing a computer program for performing contextual searches. The IP phone may further comprise a processor coupled to the memory unit where the processor, responsive to the computer program, comprises circuitry for receiving a command to perform a contextual search. The processor may further comprise circuitry for receiving search criteria. The processor may further comprise circuitry for submitting the search criteria to the server. The processor may further comprise circuitry for receiving from the server a list of merchants matching the search criteria and information regarding each of the merchants in the list.

In another embodiment of the present invention, a system comprises an Internet Protocol (IP) phone coupled to a server where the IP phone is configured to receive a ballot from the server. The IP phone comprises a memory unit operable for storing a computer program for performing a vote on the ballot. The IP phone may further comprise a processor

**3**

coupled to the memory unit where the processor, responsive to the computer program, comprises circuitry for receiving the ballot from the server. The processor may further comprise circuitry for selecting either yes, no or abstain for each issue on the ballot. The processor may further comprise circuitry for submitting the selections for each issue on the ballot to the server.

In another embodiment of the present invention, a system comprises an Internet Protocol (IP) phone comprising a software platform where the software platform comprises a first layer controlling a hardware configuration of the IP phone. The software platform may further comprise a second layer interacting with the first layer. The second layer may provide an execution environment. The software platform may further comprise a third layer interacting with the second layer. The third layer may interface with multiple communication infrastructures. The software platform may further comprise a fourth layer interfacing with the third layer. The fourth layer may provide communication services and data services required by applications. The software platform may further comprise a fifth layer interfacing with the fourth layer. The fifth layer may implement logic used to run applications operating on the IP phone.

In another embodiment of the present invention, a method for developing domain-specific applications for Internet Protocol (IP) phone may comprise the step of defining a requirement specification for an application. The method may further comprise identifying features of a first software layer in a software platform of an IP phone to be incorporated into the application. The first software layer may be configured to provide communication services and data services required by the application. The method may further comprise enabling the identified features in the first layer in the software platform of the IP phone. The method may further comprise building a client interface to allow features required for the application to be implemented but are not covered by the first layer to collaborate with the first layer in the software platform of the IP phone. The method may further comprise implementing the features not covered by the first layer but are required for the application to be implemented.

In another embodiment of the present invention, a system comprises a server where the server comprises a front-end console configured to present a selective view of all data accessible. The server may further comprise a transaction engine coupled to the front-end console where the transaction engine is configured to handle transactions from an Internet Protocol (IP) phone coupled to the server. The server may further comprise a plurality of databases coupled to the transaction engine where the plurality of databases is configured to store sales information, records of transactions, vendor information, consumer information and scheduling information as to when transaction applications are distributed. The server may further comprise a settlement manager coupled to the front-end console and the transaction engine. The settlement manager may be configured to maintain a log of actions performed by a user of the IP phone during a communication session with the server.

The foregoing has outlined rather generally the features and technical advantages of one or more embodiments of the present invention in order that the detailed description of the present invention that follows may be better understood. Additional features and advantages of the present invention

**4**

will be described hereinafter which may form the subject of the claims of the present invention.

BRIEF DESCRIPTION OF THE DRAWINGS

A better understanding of the present invention can be obtained when the following detailed description is considered in conjunction with the following drawings, in which:

FIG. **1** illustrates an embodiment of the present invention of a system implementing a multi-layer fixed telephone system interacting with different communication infrastructures;

FIG. **2** illustrates an embodiment of the present invention of an external configuration of an IP phone;

FIG. **3** illustrates the software platform of the IP phone in accordance with an embodiment of the present invention;

FIG. **4** illustrates an embodiment of the present invention of the communication infrastructure services layer of the software platform of the IP phone;

FIG. **5** illustrates an embodiment of the present invention of the common converged communication base services layer of the software platform of the IP phone;

FIG. **6** illustrates an embodiment of the present invention of the domain-specific application layer of the software platform of the IP phone;

FIG. **7** is a flowchart of a method for developing domain-specific applications for converged communication terminals (IP phones) based on the software platform in accordance with an embodiment of the present invention;

FIG. **8** is a flowchart of a method by which one or more domain-specific applications developed for a specific IP phone are rapidly retargeted to a new hardware platform and/or operating system based on the software platform in accordance with an embodiment of the present invention;

FIG. **9** is a flowchart of a method by which one or more domain-specific applications developed for a specific IP phone are rapidly retargeted to a new communications infrastructure based on the software platform in accordance with an embodiment of the present invention;

FIG. **10** illustrates an embodiment of the present invention of a client-server Transaction Applications Delivery Services (TADS) communications architecture;

FIG. **11** illustrates an embodiment of the present invention of the server and client sides of a transactional application delivery system;

FIG. **12** illustrates an embodiment of the present invention of end-to-end services that enable contextual search and advertising service delivery to IP phones;

FIG. **13** illustrates an embodiment of the present invention of a transactional application delivery system server side elements;

FIG. **14** illustrates an embodiment of the present invention of a transactional application delivery system client side elements;

FIG. **15** illustrates an embodiment of the present invention of a telephony services architecture;

FIG. **16** illustrates an embodiment of the present invention of a directory services architecture;

FIG. **17** illustrates an embodiment of the present invention of how transactional applications in a domain-specific applications layer are supported by the software modules in the converged communication base services layer of the software platform of the IP phone;

FIG. **18** illustrates an embodiment of the present invention of a transactional application delivery system services architecture.

US 7,525,955 B2

5

FIG. **19** illustrates an embodiment of the present invention of a transactional application delivery system (TADS) directory search and advertising services;

FIG. **20** illustrates an embodiment of the present invention of monetizing baseline directory services, premium listing services and advertising services;

FIG. **21** is a flowchart of a method for performing contextual search in accordance with an embodiment of the present invention;

FIG. **22** is a flowchart of a method for performing a local save in accordance with an embodiment of the present invention;

FIG. **23** is a flowchart of a method for performing one-touch call in accordance with an embodiment of the present invention;

FIG. **24** is a flowchart of a method for scheduling advertisements in accordance with an embodiment of the present invention;

FIG. **25** is a flowchart of a method for enabling no contact call service functionality of select premium listings in accordance with an embodiment of the present invention;

FIG. **26** illustrates an embodiment of the present invention of the interaction between an IP phone and a voting application server used in implementing a voting booth application; and

FIG. **27** is an embodiment of the present invention of a hardware configuration of an IP phone.

DETAILED DESCRIPTION

Although the present invention is described with reference to an Internet Protocol (IP) phone it is noted that the principles of the present invention may be applied to any Internet connected device, such as an Internet appliance. It is further noted that embodiments applying the principles of the present invention to such Internet connected devices would fall within the scope of the present invention.

In the following description, numerous specific details are set forth to provide a thorough understanding of the present invention. However, it will be apparent to those skilled in the art that the present invention may be practiced without such specific details. In other instances, well-known circuits and software modules have been shown in block diagram form in order not to obscure the present invention in unnecessary detail. For the most part, details considering timing considerations and the like have been omitted inasmuch as such details are not necessary to obtain a complete understanding of the present invention and are within the skills of persons of ordinary skill in the relevant art.

FIG. **1** illustrates a high level diagram of an embodiment of the present invention of a system **100** implementing a multi-layer fixed telephone system **101** interacting with different communication infrastructures. Referring to FIG. **1**, system **100** allows multi-layer fixed telephone system **101** (referred to herein as an "IP phone") to interact with other entities over different communication infrastructures, such as data, voice, mobile and Public Switched Telephone Networks (PSTN) **102**, **103**, **114**, **105**, respectively, to provide telephony functions and run applications. A more detailed description of the external configuration of IP phone **101** is described below in association with FIG. **2**. Further, a more detailed description of the hardware configuration of IP phone **101** is described further below in association with FIG. **27**. In one embodiment, IP phone **101** may be coupled to a computer system **112**, data network **102** and a Public Switched Telephone Network (PSTN) **105**. IP phone **101** may communicate with third-party voice over IP (VoIP) terminals **116** via data net-

6

work **102**. IP phone **101** may further communicate with an analog phone **113** over PSTN **105**. IP phone **101** may further communicate with analog phone **113** over voice network **103** via data network **102**. Further, IP phone **101** may communicate with a mobile phones **115** over mobile network **114** via data network **102**.

System **100** may further include a Public Switched Telephone Network (PSTN) Gateway **104** coupled to data network **102**. PSTN gateway **104** may be configured to translate signaling and media between data network **102** coupled to IP phone **101** and PSTN **105**. PSTN **105** may be coupled to conventional telephone **113**. PSTN gateway **104** may allow IP phone **101** to communicate with standard analog telephones **113** in PSTN **105**.

System **100** may further include a mobile gateway **106** coupled between data network **102** and mobile network **114**. Mobile gateway **106** may be configured to translate signaling and media between data network **102** and mobile network **114**. Mobile network **114** may be coupled to mobile telephone **115**. Mobile gateway **106** may allow IP phone **101** to communicate with mobile phones **115** in mobile network **114**. IP phone **101** may signal mobile gateway **106** in order to enable calls destined to mobile telephone **115** to be terminated on IP phone **101**.

System **100** may further include an Internet Protocol-Private Branch exchange (IP-PBX) **107** coupled to data network **102**, voice network **103** and analog phones **113** or VoIP network **116**. IP-PBX **107** may be configured to interconnect voice and data networks **103**, **102**, respectively, in an enterprise environment and provide centralized call control functionality.

System **100** may further include an application server **108** coupled to data network **102**. Application server **108** may be configured to contain the server side components (discussed further below) of client/server applications accessed through IP phone **101**, such as the components of the Transactional Application Delivery System (TADS) (discussed further below).

System **100** may further include a telephony services server **109** coupled to data network **102**. Telephony services server **109** may be configured to provide services that allow IP phone **101** to communicate with other analog and VoIP terminals and extend its range of available telephony features.

System **100** may further include a converged messaging and directory server **110** coupled to data network **102**. Converged messaging and directory server **110** may be configured to contain all the components necessary to provide the user with a unified converged platform to send and receive electronic and voice mail messages. In addition, server **110** may provide IP phone **101** with access to personal and public contact directories.

System **100** may further include a database repository **111** coupled to data network **102**. Database repository **111** may be configured to manage and provide IP phone **101** and servers **107**, **108**, **109** and **110** with data needed to perform their tasks.

It is noted that FIG. **1** is illustrative and that not all of the components of system **100** were depicted for the sake of brevity (e.g., provisioning and configuration servers). It is further noted that system **100** is not to be limited in scope to the system disclosed.

FIG. **2** illustrates an embodiment of the present invention of an external configuration of IP phone **101**. Referring to FIG. **2**, IP phone **101** includes a touch screen display **201** with the capability of displaying graphical images and collecting input from the user by pressing certain areas in the screen with a finger or an instrument designed for such purposes such as a stylus. IP phone **101** may further include a message waiting

7

indicator **202** to alert the user that a new message has arrived to the user's inbox. Below touch screen display **201**, IP phone **101** includes four directional keys **203**A-D (**203**A configured to move an image displayed on screen **201** up; **203**B configured to move an image displayed on screen **201** down; **203**C configured to move an image displayed on screen **201** to the left; and **203**D configured to move an image displayed on screen **201** to the right); and an OK button **204** to navigate the user interface screens **201** and select items in focus, as an alternative to using the touch screen. To each side of directional keys **203**A-D, IP phone **101** includes SEND and END keys **205**, **206**, respectively. Keys **205**, **206** may be used as an alternative to the touch screen to exercise telephony features in graphical user interface screen **201** such as initiating and finishing a call. In addition, keys **205**, **206** can be used to help the user navigate the user interface; for example, using END button **206** to go directly to the home screen or cancel some operation. IP Phone **101** also includes the following connectors distributed along side **213** for external devices: Universal Serial Bus (USB) **214**, headset **215**, microphone, **216**, Ethernet switched port for Personal Computer (PC) and Local Area Network (LAN), **217** and **218**, respectively, power supply **219**, RJ-11 (POTS) connector **220**, antenna **221** for support of wireless protocols such as, but not limited to, wireless fidelity (WI-FI) and Zigbee, RS-232 serial port **222**, and JTAG connector **223**.

IP phone **101** may further include an opening **207** for a phone speaker and a handset cradle **208** for corded or cordless handsets. IP phone **101** may further include a standard telephony keypad array **209** consisting of digits 0 to 9, the star and pound keys. Below keypad **209**, IP phone **101** may include a circular key **210** used to activate and deactivate speakerphone **207**. At each side of speakerphone key **210**, two triangular keys **211**A-B may be used to increase (**211**B) and decrease (**211**A) the volume of the active audio output: handset, headset, speaker or ringer. Below speakerphone and volume keys **210**, **211**A-B, respectively, IP phone **101** includes an indicator **212** that turns on when speakerphone **207** is active and turns off when speakerphone **207** is inactive.

An embodiment of the hardware configuration of IP phone **101** is provided below in association with FIG. **27**. Referring to FIG. **27**, IP phone **101** may include a processor **2701** coupled to various other components by system bus **2713**. An operating system **2710** may run on processor **2701** and provide control and coordinate the functions of the various components of FIG. **27**. An application **2711** in accordance with the principles of the present invention may run in conjunction with operating system **2710** and provide algorithms, domain-specific knowledge and calls to operating system **2710** where the algorithms, domain-specific knowledge and calls implement the various functions or services to be performed by application **2711**. Application **2711** may include, for example, an application configured to perform a contextual search as discussed further below in association with FIG. **21**. Application **2711** may further include an application configured to perform a local caching of contextual search results as discussed further below in association with FIG. **22**. Application **2711** may further include an application configured to perform a one-touch call as discussed further below in association with FIG. **23**. Application **2711** may further include an application configured to order from a merchant using the no contact call service feature as discussed further below in association with FIG. **25**. Application **2711** may further include an application configured to vote on one or more issues on a ballot as discussed further below in association with FIG. **26**. Application **2711** may further include an application configured to host other domain-specific applications

8

as discussed further below in association with FIG. **7**. Application **2711** may further include an application configured for a specific IP phone that can be retargeted to a new hardware platform and/or operating system as discussed further below in association with FIG. **8**. Application **2711** may further include an application configured for a specific IP phone that can be retargeted to a new communications infrastructure as discussed further below in association with FIG. **9**

Read only memory (ROM) **2702** may be coupled to system bus **2713** and could include a basic input/output system ("BIOS") that controls certain basic functions of IP phone **101**. Persistent memory ("FLASH") **2712** may be coupled to system bus **2713** and include the operating system **2710**, configuration data and user data. It is noted that local directories accessible through supported interfaces **1609** (discussed further below in association with FIG. **16**) may reside in FLASH **2712**. It is further noted that one or more applications **2711** may reside in FLASH **2712**, Random access memory (RAM) **2709** and disk adapter **2707** may also be coupled to system bus **2713**. It should be noted that software components including operating system **2710** and application **2711** may be loaded into RAM **2709** which may be IP phone's **101** main memory. Disk adapter **2707** may be an integrated drive electronics ("IDE") adapter that communicates with a disk unit **2708**, e.g., disk drive. It is noted that the applications mentioned above may reside in disk unit **2708**. It is further noted that local directory accessible via supported interfaces **1609** (discussed further below in association with FIG. **16**) may reside in disk unit **2708**.

Returning to FIG. **27**, in conjunction with FIG. **1**, communications adapter **2705** may also be coupled to system bus **2713**. Communications adapter **2705** may interconnect bus **2713** with an outside network **2704** enabling IP phone **101** to communicate with data network **102**, servers **106**, **107**, **108**, **109**, **110**, analog phones **113** via PSTN **105**, mobile phone **115** via mobile network **114**, etc.

Returning to FIG. **27**, in conjunction with FIG. **2**, other devices **2703** may be integrated into the system bus **2713** via miscellaneous input/output (I/O) ports **2706**.

Implementations of the invention include embodiments as a VoIP phone (IP phone) programmed to execute the method or methods described herein, and as a computer program product. According to the implementations, sets of instructions for executing the method or methods may be resident in the random access memory **2709** of one or more systems configured generally as described above. Until required by IP phone **101**, the set of instructions may be stored as a computer program product in another computer memory, for example, in disk unit **2708**. Furthermore, the computer program product may also be stored at another computer and transmitted when desired to the IP phone **101** by a network or by an outside network **2704** such as the Internet. One skilled in the art would appreciate that the physical storage of the sets of instructions physically changes the medium upon which it is stored so that the medium carries computer readable information. The change may be electrical, magnetic, chemical or some other physical change.

IP phone **101** includes a software platform with multiple layers adaptable to be used with different applications operating on IP phone **101** as well as adaptable to using different communication infrastructures. An embodiment of such a software platform is provided below in association with FIG. **3**.

Referring to FIG. **3**, platform **300** of IP phone **101** may include five layers. Layer **1** (hardware platform) **301** of platform **300** may include software to control the physical embodiment of IP phone **101**. The physical embodiment

9

includes, but is not limited to, Application-Specific Integrated Circuits (ASICs), processing elements, Input/Output (I/O) devices, peripherals, and storage elements.

Layer **2** (operating system services) **302** of platform **300** provides an interface to access operating system (OS) services and hardware platform devices. Layer **2 302** provides an execution environment for the software modules and a hardware abstraction layer. Among the responsibilities of layer **2 302** include implementing common OS services such as memory management, task management, date and time information, and access to peripherals; providing file system services to emulate hard disk drive on flash memory devices; providing a Transport Control Protocol/Internet Protocol (TCP/IP) networking API and the implementation of other required protocols such as Dynamic Host Configuration Protocol (DHCP), Trivial File Transfer Protocol (TFTP), Simple Network Time Protocol (SNTP) and Simple Network Management Protocol (SNMP); providing an embedded web server implementation that allows remote configuration through a web browser; implementing core graphics functionality for drawing, window management, event routing, fonts and bitmaps; and, implementing hardware drivers for each of the converged communication terminal's **101** peripherals.

Layer **3** (communications infrastructure services) **303** of platform **300** may be configured to interface with multiple communication infrastructures. Layer **3 303** of platform **300** contains a local services pool and a remote services pool, as illustrated in FIG. **4**. It is important to note that system **100** (FIG. **1**) contains a basic set of telephony features provided by a Common Converged Communication Base Services (CCCBS) layer **304**, as discussed below, which makes serverless communications straightforward as there is no reliance on the server/proxy for such features.

FIG. **4** illustrates an embodiment of the present invention of layer **3 303**. Referring to FIG. **4**, in conjunction with FIGS. **1** and **3**, layer **3 303** may include a remote services pool **401**. Remote services pool **401** refers to components that do not reside locally on IP phone **101**, but rather on telephony services **109** or PSTN **105** with which IP phone **101** may have to collaborate to provide extended communications features and converged voice/data/video services and/or interface with proprietary IP PBXs **107**, application servers **108** and PSTN elements such as centrex, call managers and softswitches. For every specific external collaborating entity, there might be an adapter module that implements all or part of the functionality exposed by a Communication Infrastructure Services (CIS) API **307**, as discussed below.

Layer **3 303** may further include a local services pool **402**. Local services pool **402** refers to components that reside on IP phone **101** and can provide an interface to communicate and collaborate with proprietary IP PBXs **107**, application servers **108** and PSTN **105** elements such as centrex, call managers and softswitches. While the vendor-specific interface implementation could reside locally or remotely on a network server or switch, the advantage of implementing this component on a network server or switch and leaving locally only a proxy to those services is that the need to create a new converged communications terminal **101** image for each change in an external component may be avoided. In addition, the gateway implementation may not be constrained by the (possibly) limited IP phone **101** resources.

Returning to FIG. **3**, platform **300** includes a layer **4** (common converged communications base services) **304**. Layer **4 304** includes communications (telephony) specific services as well as other data services commonly that may be required

10

by domain-specific converged communication applications (referring to applications operating on IP phone **101**), as illustrated in FIG. **5**.

FIG. **5** illustrates an embodiment of the present invention of layer **4 304**. Referring to FIG. **5**, layer **4 304** includes telephony services **501**. Telephony services **501** include call processing functions that implement the core functionality to initiate, terminate and manage phone calls over VoIP and/or POTS communication infrastructures. Layer **4 304** may further include an implementation of signaling, media transport, voice processing and call control functionality. Among the responsibilities of these functions are: providing basic call control features; providing call setup and tear down functionality through protocols like Session Initiation Protocol (SIP), H.323, Media Gateway Control Protocol (MGCP) and others; providing media transport and signaling through protocols like Real-Time Protocol (RTP) and Real-Time Control Protocol (RTCP); providing voice processing features (echo cancellation, Voice Activity Detection (VAD), jitter buffering, etc); and notifying call-related events to the upper layer.

Layer **4 304** may further include other services **502**, such as data services. Services **502** may include Hyper-Text Transfer Protocol (HTTP) clients, Remote Procedure Call/Simple Object Access Protocol (RPC/SOAP), eXtensible Markup Language (XML) parser, directory services, configuration, Personal Computer/Personal Data Assistant (PC/PDA) synchronization, and user interface. HTTP client services provide a transport protocol to store and retrieve from server objects such as XML documents and images and play an important role in IP communications and application development, therefore enabling converged communications terminal **101** to participate in web-centric architectures. RPC/SOAP services, implement an interface to make remote procedure calls. Remote procedure calls allow IP phone **101** to send requests to and receive responses from components in the computer network. SOAP is an implementation of RPC that uses XML to format request/response information and HTTP to transport this information. Providing support for SOAP enables IP phone **101** to participate in web services. XML parser services translate data represented in XML format into internal data structures and requests for services. Structuring documents using XML allows sharing of information between different platforms and applications. In IP phone **101** there are at least three applications for XML: to describe the user interface layout and components, to make remote procedure calls and to format configuration files. Light-weight Directory Access Protocol (LDAP) provides an interface to access information in directory servers. Directory services are commonly used to carry out three main requirements of Internet Protocol (IP) telephony: authentication, personalization and white pages. Configuration services allow for the management of IP phone **101** settings such as: device ID, network, dial-plans, audio (codecs, Dual Tone Multi-Frequency (DTMF), voice processing), call control, SIP related parameters, volume, display, date/time, authentication, security, voice mail, phone book, ringer behavior, power management, language, peripherals, and software management. These services also implement routines for automatic retrieval of phone configuration and software upgrades from a server. PC and PDA communications services provide an interface to communicate and collaborate with external user devices such as the PC and PDA. IP phone **101** should collaborate closely with these devices to share information, keep that information synchronized, and accomplish tasks more effectively.

Returning to FIG. **3**, platform **300** includes a layer **5** (domain-specific applications) **305**. Layer **5 305** implements the

**11**

business logic and the presentation logic used to run applications operating on IP phone **101** as illustrated in FIG. **6**.

FIG. **6** illustrates an embodiment of the present invention of layer **5 305**. Referring to FIG. **6**, layer **5 305** includes business logic **601** that provides the mechanisms to combine the services provided by underlying modules into coherent applications that add some value to the end user. Some components of business logic **601** may run locally on IP phone **101** and some components will run remotely in an application server **108** (FIG. **1**). Some examples include extended calling features, phone directories, management and diagnostic tools, unified messaging, intelligent call management, instant messaging, contact management, personalized ring tones, call tracking, remote collaboration tools, and industry specific applications. It is at this layer that domain-specific differentiating features are implemented.

Layer **5 305** further includes presentation logic **602** that responds to the fact that the primary concerns of the User Interface (UI) module are the mechanisms of user interaction and how to lay out an appropriate presentation to the user in contrast with the primary concerns of business logic **601** are application domain policies and persistent storage interactions. The UI module may change according to customer's needs without changing the applications core functionality. For example, the same application domain modules with rich, web-based or text-based clients could be reused. Furthermore, the application module can be tested independently without resorting to awkward Graphical User Interface (GUI) scripting tools.

Layer **4 304** may be leveraged in the design of differentiated IP phones **101** via the following APIs. An operating system services API **306** provides common methods to access services provided by the operating system. For each specific operating system there is a module that supports the abstraction.

A Communication Infrastructure Services (CIS) API **307** provides common methods to access converged communication services available via the installed infrastructure. For each vendor-specific infrastructure there will be a module that will support the abstraction.

A Common Converged Communication Base Services (CCBS) API **308** provides a standard method to access common converged communication services previously developed to satisfy a broad-range of converged communication domain-specific applications.

Platform **300** may be used to develop domain-specific applications (specific applications operating on IP phone **101**) for converged communication devices, to retarget one or more domain-specific applications developed for a specific IP phone **101** to a new hardware platform and/or operating system and/or communications infrastructure.

The method by which domain-specific applications for IP phones **101** may be rapidly developed based on the flexible software platform **300** previously described is presented schematically in FIG. **7**. FIG. **7** illustrates a method **700** for the development of domain-specific applications for converged communication terminals (IP phones **101**) based on software platform **300** (FIG. **3**) in accordance with an embodiment of the present invention.

Referring to FIG. **7**, in conjunction with FIGS. **1-3**, in step **701**, the requirement specifications for the application of interest are defined. In step **702**, the modules from common converged communications base services layer **304** to be incorporated into domain-specific application **305** is identified. Once these services are identified, these features are enabled in base services layer **304** in step **703**. In step **704**, a client interface is built so that the extra functionality devel-

**12**

oped for domain-specific application **305** can collaborate with the previously available base services layer **304**. In step **705**, any extra functionality that is not covered by base services **304** that is required for the domain-specific application of interest **305** is implemented. Method **700** leverages CCBS API **308**.

It is noted that method **700** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **700** may be executed in a different order than presented and that the order presented in the discussion of FIG. **7** is illustrative. It is further noted that certain steps in method **700** may be executed in a substantially simultaneous manner.

The method by which one or more domain-specific applications developed for a specific IP phone **101** (FIGS. **1-3**) may be rapidly retargeted to a new hardware platform and/or operating system based on the flexible software platform **300** (FIG. **3**) previously described is presented schematically in FIG. **8**. FIG. **8** illustrates a method **800** by which one or more domain-specific applications developed for a specific IP phone **101** may be rapidly retargeted to a new hardware platform and/or operating system based on the flexible software platform **300** in accordance with an embodiment of the present invention.

Referring to FIG. **8**, in conjunction with FIGS. **1-3**, in step **801**, the differences between constructs of the original and the new operating systems are identified. Further, any new hardware drivers that would be needed are identified. Once these have been identified, an operating system services layer adapter module is built as part of API **306** for the new operating system and the implementation of the new hardware drivers in step **802**. Method **800** leverages the operating system services API **306**.

It is noted that method **800** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **800** may be executed in a different order than presented and that the order presented in the discussion of FIG. **8** is illustrative. It is further noted that certain steps in method **800** may be executed in a substantially simultaneous manner.

The method by which one or more domain-specific applications developed for a specific IP phone **101** (FIGS. **1-3**) may be rapidly retargeted to a new communications infrastructure based on the flexible software platform **300** (FIG. **3**) previously described is presented schematically in FIG. **9**. FIG. **9** illustrates a method **900** by which one or more domain-specific applications developed for a specific IP phone **101** may be rapidly retargeted to a new communications infrastructure based on the flexible software platform **300** in accordance with an embodiment of the present invention.

Referring to FIG. **9**, in conjunction with FIGS. **1-3**, in step **901**, an adapter module for the new communications infrastructure services layer **303** on which IP phone **101** will be deployed is built. In step **902**, communications infrastructure services layer **303** is configured to accept the new module and to have it collaborate with pre-existing modules. Method **900** leverages operating system services API **306** and communications infrastructure services API **307**.

It is noted that method **900** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **900** may be executed in a different order than presented and that the order presented in the discussion of FIG. **9** is illustrative. It is further noted that certain steps in method **900** may be executed in a substantially simultaneous manner.

An embodiment of a client-server communications architecture for which software platform **300** (FIG. **3**) and methods

**13**

described above can be used to develop client converged communication terminal devices **101** that can support the distribution of value-added services to end-users is illustrated in FIG. **10**. FIG. **10** illustrates an embodiment of the present invention of a client-services communications architecture **1000** for which software platform **300** and methods described above can be used to develop client converged communication terminal devices **101** that can support the distribution of value-added services to end-users.

Referring to FIG. **10**, client-services communications architecture **1000** forms the basis of a Transactional Application Delivery System (TADS) for service providers and/or third party developers and content providers to rapidly develop, deliver, and manage revenue generating and productivity enhancing data-voice applications for IP phones **101**. Data-voice applications are those that take advantage of voice over Internet Protocol (VoIP) and/or POTS/Broadband infrastructures.

As illustrated in FIG. **10**, TADS server side elements **1001** communicate with TADS client side elements **1002**, e.g., IP phones **101**, via data network **102**, e.g., Internet. Client-services communications architecture **1000** has built-in flexibility allowing it to evolve with advancements in hardware, software, protocols, thus providing an extensive platform for delivery of applications and content. The following are among the main characteristics of software platform **300** (client-services communications architecture **1000**).

TADS **1000** provides an integrated download and content management system which enables the delivery of software and content to enabled devices. This download manager supports the entire process of software provisioning, including the submission of content and applications from third-party developers, testing and certification of those applications, bundling, pricing, demographics-based targeted promotions, and delivery to enabled terminals.

TADS **1000** further includes the capability to remotely, provision, configure, or upgrade compatible devices. This enables providing online help support to users and reducing the need for on premise visits. Through this capability, service providers are able to bring up new clients, push the latest software updates to the terminals, or remotely perform a move, add, or change to a customer's system.

TADS servers **1001** may process all voice and data before transmitting to the device. TADS servers **1001** communicate with TADS client side elements **1002** to determine the optimal delivery, compression, and formatting of the information to be displayed on IP phone **101**. This content optimization will maximize the service providers use of available device resources ate at the customer's premise.

TADS **1000** further includes the capability of using open standard interfaces to enable quick and easy integration with a carrier's existing systems and third party equipment and software.

Furthermore, all software components of TADS **1000** incorporate redundancy and load balancing to provide a very high level of service availability. To enable carrier grade reliability, TADS servers **1001** route all voice and data traffic to other servers should it encounter any hardware or software failures. TADS **1000** provides scalability simply through the addition of servers. A more detailed description of TADS **1000** is provided below in association with FIG. **11**.

FIG. **11** illustrates an embodiment of the present invention of the server and client sides of TADS **1000**. Referring to FIG. **11**, TADS **1000** includes a server side **1001** (FIG. **10**) and a client side **1002** (FIG. **10**). It is noted that TADS server **1001** refers to server **108** (FIG. **1**) and that TADS client side elements **1002** refer to IP phone **101** (FIGS. **1-3**).

**14**

TADS server side elements **1001** include a front-end console **1101** that allows merchants to submit to a content distribution platform **1204** (FIG. **12** which will be discussed below), via a web-based interface (not shown), multi-media advertising content, define the demographic characteristics of the target audience, schedule the dates and times when advertisements from third parties should be distributed, and pay for the service. A third-party may develop an alternate front-end console **1119** that may extend upon front-end console **1101**.

TADS server side elements **1001** further include a TADS server protocol engine **1102** that handles all communications using the TADS protocol on the server side for handling transactions, distributing advertisements, subscribing clients to distribution groups and delivering products to clients.

TADS server side elements **1001** further include various server software modules and databases (discussed below) on top of which telephony applications and converged voice-data applications and services may be constructed. TADS server side elements **1001** further include a settlement manager **1302** (FIG. **13** which will be discussed below) that maintains a log of all end-user actions during a converged communications session that can then be used to determine profit allocation throughout the value chain (merchants, content providers, service providers, and the owner of the content distribution platform) as well as to obtain valuable closed activity reports that may be used to drive new services and log valuable demographic data on all end-user transactions.

Referring to FIG. **11**, TADS front-end (console) **1101** may be configured to be a front-end to the Transactional Applications Delivery System (TADS) programmatic API **1103**. TADS front-end (console) **1101** presents a selective view of all the data accessible to programmatic API **1103**. This includes custom graphical user interfaces, web-based interfaces, command line interfaces, and others. Customized front-ends can be developed by third-parties also.

TADS programmatic APIs **1103** expose all aspects of the TADS framework to calling applications. This includes browsing (read, write, delete, add) information on consumers, vendors, billing, channel definitions, transactions, content and distribution groups.

TADS server side elements **1001** further include a vendor management module **1104** configured to allow access to a vendor database **1105**. Vendor management module **1104** may be an adapter to communicate with an existing system or internal vendor database **1105**. All the information regarding vendors is stored and accessed through vendor management module **1104**. Vendor management module **1104** can be used by a content programming module **1106** to get vendor information. Vendors are clients of the service provider. They buy advertisement space/time on IP phone **101** and get orders from customers through IP phone **101**.

TADS server side elements **1001** further include a demographics module **1107** configured to access a consumer database **1108** and apply rules to query records that show specific demographic characteristics. Demographics module **1107** may further include an adapter to communicate with an existing system or an internal consumer database **1108**.

TADS server side elements **1001** further include a user management module **1109**. Users of TADS-enabled clients may be regarded as consumers by the vendors using TADS. Users can be added, changed or deleted through the use of user management module **1109**. All information regarding users is accessed through user management module **1109**.

TADS server side elements **1001** further include content programming module **1106**, as mentioned above. Content programming module **1106** is involved in defining the distribution and exposition of advertisements throughout the net-

US 7,525,955 B2

15                                                                16

work of TADS-enabled clients, e.g., IP phone **101**. Advertisements are exposed at the remote clients by the transactional applications distributed by TADS server **1001**. Vendors can use the graphical user interface exposed by TADS front-end **1101** to access content programming module **1106**. Content programming module **1106** may be used to create distribution groups for advertisements and to schedule showing time among the clients in the group. Vendors can define distribution and level of exposure for an advertisement using criteria such as user demographics, geographical or organizational boundaries and buying history. The resulting scheduling information is stored in a distribution group schedule database **1110**.

TADS server side elements **1001** further include a transaction engine **1111**. Transaction engine **1111** is an engine that autonomously handles transactions from TADS client side elements **1002**. Transaction engine **1111** may be configured to keep records of all transactions handled. Transaction engine **1111** may also access a billing database **1112** (or an external billing system). Transaction engine **1111** can also change consumer database **1108** to reflect particular information about consumer buying behavior in consumer database **1108**. Transactions are started by TADS client side elements **1002**. A transaction starts with a consumer selecting an advertisement on TADS client side elements **1002**. Client and server exchange purchase order details and after the order is confirmed the product is delivered (when appropriate) over network **102**. A transaction ends when the product is delivered to the TADS-enabled device, e.g., IP phone **101**.

TADS server side elements **1001** further include TADS server protocol engine **1102**, as mentioned above. TADS server protocol engine **1102** may be configured to handle all communications using the TADS protocol on the server side. The TADS communication protocol is used for handling transactions, distributing advertisements, subscribing clients to distribution groups and delivering products to TADS client side elements **1002**.

TADS server side elements **1001** further include a Transactional Applications (TA) distribution engine **1113**. TA distribution engine **1113** may be used to distribute Transactional Applications (TA) to TADS client side elements **1002**, e.g., IP phones **101**. TA distribution engine **1113** may be configured to look up the scheduling database for TAs to distribute and to use TADS protocol engine **1102** to send them to the appropriate destinations. Destinations are defined as groups of TADS client side elements **1002** that have been identified as having the appropriate channels to handle the TA to be sent. Transactional applications are chartered with the task of advertising a product and completing a sell transaction from a network of TADS client side elements **1002**.

TADS server side elements **1001** further include a group subscription manager module **1114** configured to handle the subscription and un-subscription of TADS client side elements **1002** for each distribution group. A distribution group contains an identifier for each of TADS client side elements **1002** that are members of the group. Subscription can take place at client registration time or it can be initiated by the server whenever a TA is scheduled for distribution. The subscription process delivers scheduling information for a TA to TADS client side elements **1002**.

TADS server side elements **1001** further include a product delivery engine **1115** configured to assist transaction engine **1111** to complete a sale by delivering a product purchased to TADS client side elements **1002** whenever possible.

TADS server side elements **1001** further include a billing manager module **1116** used to access billing information.

Billing manager module **1116** may include an adapter to communicate with an external billing system or internal billing database **1112**.

Billing database **1112** may contain information on sales done on behalf of vendors through TADS and TA distribution charges. Vendors are billed by service providers for their use of TADS.

Other databases in TADS server side elements **1001** include a transaction database **1117** configured to contain records of all transactions enabled by TADS.

Another database in TADS server side elements **1001** is vendor database **1105**, as mentioned above. Vendor database **1105** contains vendor information.

Another database in TADS server side elements **1001** is consumer database **1108**, as mentioned above. Consumer database **1108** contains all information related to consumers. Consumers are the users of TADS client side elements **1002**.

Another database in TADS server side elements **1001** is distribution group schedule database **1110**, as mentioned above. Distribution group schedule database **1110** contains information on what devices should get what TAs and at what times they should be shown.

Another database in TADS server side elements **1001** is a content database **1118**. Content database **1118** contains products and TAs to be delivered by TADS server **1001**.

Referring to FIG. **11**, elements of TADS client **1002** include a TA programming manager module **1120** configured to receive subscription requests from servers through a TADS client Protocol Engine **1121**. TA programming manager module **1120** may be configured to keep track of what TAs are expected through each channel at specific times and where in the phone user interface they should be rendered.

TADS Client Protocol Engine **1121** may be configured to handle all communications using the TADS protocol in each client. The TADS communication protocol is used for handling transactions, distributing advertisements, subscribing clients to distribution groups and delivering products to TADS client side elements **1002**.

Client side elements **1002** may further include a TA execution engine **1122** configured to execute a TA at the client, e.g., IP phone **101**. The TA uses a transaction broker module **1123** to engage in transactions with TADS server **1001**. TA execution engine **1122** also renders advertisements on the user interface of the TADS client side elements **1002**, e.g., IP phone **101**.

Client side elements **1002** may further include a UI event handler **1124**. UI event handler **1124** is not provided by the TADS framework. It is part of the infrastructure of TADS client side elements **1002**. UI event handler **1124** gets events from the UI of TADS client side elements **1002**, e.g., IP phone **101**, and forwards them to transaction broker module **1123** and TA execution engine **1122**.

Transaction broker module **1123** interacts with transaction engine **1122** at TADS server **1001** through TADS client protocol engine **1121**. Transaction broker module **1123** helps TAs to complete transactions.

Client side elements **1002** may further include a product installer module **1125** configured to install products in database **1126** delivered through the TADS framework.

Client side elements **1002** may further include a product downloader module **1127** which interacts with the product delivery engine at TADS server **1001** through TADS client protocol engine **1121**. Product downloader module **1127** downloads products purchased through TADS.

Client side elements **1002** may further include a group and channel bindings database **1128** which contains information

17

on what TAs will be delivered through each distribution group and when and where in the UI their advertisements will show up.

Installed applications database **1126**, as mentioned above, will hold all applications installed through TADS.

It is noted that the embodiment of the server and client sides of TADS **1000** may include other and/or additional modules that for clarity are not depicted. It is further noted that TADS **1000** may be implemented with a different combination of modules and that those presented in the discussion of FIG. **11** are illustrative.

An embodiment of the present invention related to the development of a series of end-to-end services and methods that enable directory search and advertising service delivery to IP phones **101** via a content distribution platform that allows consumers, businesses, content owners, and service providers to leverage the benefits of converged data-voice applications based on the TADS building blocks discussed above and software platform **300** (FIG. **3**) is discussed below in association with FIG. **12**.

FIG. **12** illustrates an embodiment of the present invention of a converged communications content distribution architecture **1200** with end-to-end services that enable directory search and advertising service delivery to IP phones **101**. Referring to FIG. **12**, merchants **1201** engage directly, via a web-based interface, with the content distribution platform owners **1204** to schedule, target, and provide multimedia content for what is referred to herein as the "premium listing services" (described in more detail further below). Among the services supported by the present innovation are "web search engine-like" search capability on the terminal (IP phone **101**), user-aware "yellow pages" applications on the terminal (IP phone **101**), one-touch call initiation, no-contact transactions, ability to save query results on the terminal (IP phone **101**), delivery of multimedia advertisements to IP phones **101**, and priority listings of merchant information based on contextual data supplied by merchant **1201**.

Referring to FIG. **12**, FIG. **12** further illustrates that converged communications content distribution architecture **1200** enables the distribution of merchant directory (contact) information and advertising content to end-user terminals (IP phones **101**) supported by a service provider's converged communications infrastructure **1205** (VoIP and/or POTS/Broadband). Content may be provided directly by existing content owners **1202** or by the merchant's themselves via network **102**. The architecture identifies five major stakeholders: the merchants **1201** that want to make their services and products available to end-users **1203**, established content owners **1202** that possess basic contact information on merchants **1201**, converged communication service providers **50** that provide the communications infrastructure used to physically exchange information between merchants **1201** and end-users **1203**, and owners **1202** of the content distribution end-to-end channel.

FIG. **13** illustrates an embodiment of the present invention of TADS server side elements **1001** that further clarify the elements of TADS server side elements **1001** depicted in FIG. **10**. Referring to FIG. **13**, in conjunction with FIGS. **10** and **11**, TADS server side elements **1001** include front-end console **1101** that allows merchants to submit to the content distribution platform, via a web-based interface, multi-media advertising content, define the demographic characteristics of the target audience, schedule the dates and times when the ads should be distributed, and pay for the service. TADS server side elements **1001** further include a TADS server protocol engine **1102** that handles all communications using the TADS protocol on the server side for handling transactions, distrib-

18

uting advertisements, subscribing clients **1002** to distribution groups and delivering products to clients **1002**. TADS server side elements **1001** further include various server software modules and databases **1301** on top of which telephony applications **1303** and converged voice-data applications and services **1304** may be constructed. TADS server side elements **1001** may further include a settlement manager **1302** that maintains a log of all end-user actions during a converged communications session that can then be used to determine profit allocation throughout the value chain (merchants, content providers, service providers, and the owner of the content distribution platform) as well as to obtain valuable closed activity reports that may be used to develop new services and log valuable demographic data on all end-user transactions.

FIG. **14** illustrates an embodiment of the present invention of TADS client side elements **1002** that further clarify the elements of TADS client side elements **1002** depicted in FIG. **10**. Referring to FIG. **14**, in conjunction with FIGS. **10-11**, TADS client side elements **1002** include TADS client protocol engine **1121** and various client software modules and databases **1401**. Client protocol engine **1121** handles all communications using the TADS protocol in each client. The TADS communication protocol is used for handling transactions, distributing advertisements, subscribing client side elements **1002** to distribution groups and delivering products to client side elements **1002**.

FIG. **15** is an embodiment of the present invention of a telephony services architecture using software platform **300** (FIG. **3**) in IP phone **101** (FIGS. **1-3** and **27**). Referring to FIG. **15**, in conjunction with FIGS. **1-3**, telephony services architecture **1500** allows for flexible implementation of extended telephony features independent of the back-end infrastructure and signaling protocol. It also hides from the application changes in the underlying operating system and hardware platform. Adding new telephony features entails changes in three main areas: extending the call control model and state machine, implementing the message exchange (call flow) in a particular signaling protocol (e.g., Session Initiation Protocol (SIP) or H323), and decoding proprietary extensions to the signaling protocol (e.g., non-standard SIP headers).

CCCBS API **308** provides a uniform telephony interface to an application, e.g., telephony application I **1501A**, telephony application II **1501B**, in domain-specific applications layer **305**. Applications **1501A**, **1501B** request telephony services (make a call, receive a call, disconnect a call, hold, transfer, forward, redial, reject, activate speaker phone) and receive confirmation events specifying if the action was completed successfully or some failure occurred. CCCBS API **308** also notifies the application of events originated at the remote end (e.g., call was dropped).

CCCBS layer **304** implements telephony high-level abstractions (call, address, terminal, provider, connections) and the call control state machine. The generic call control block **1502** provides basic features expected from a regular phone such as make call, receive call, hold, transfer, 3-way conference, call waiting, redial, do not disturb, caller id, and predialing. Many other extended features such as forward, find-me, call park/pickup, click-to-dial, automatic redial, and call screening could be required depending on the deployment environment or customer's needs. Even though the main logic of many of these features is implemented at the IP PBX **107** or a specific telephony services server **109**, such as a SIP Server, client **1002** still needs to extend its baseline state machine (discussed below) to participate and support these features. Customization at this level may require implementing features that only specific vendors provide and selecting

19

the precise feature combination that a customer needs. This is shown in vendor specific call control blocks 1503A-B.

CIS API 307 provides a protocol and vendor independent interface that will isolate CCCBS layer 304 from changes in the signaling protocol used to implement supported telephony services and how the protocol is used to implement a particular feature. For example, one may use either SIP or H323 as the underlying signaling protocol depending on the telephony infrastructure where IP phone 101 will be deployed. In addition, the same standard feature, call forward for example, can be implemented with a different combination of protocol messages. Since SIP is a general protocol for the establishment and management of multimedia sessions and not specific to telephony (that is, establishing telephony sessions is one of its uses), one may combine SIP messages in different ways to implement the same telephony features. IP phone 101 may need to adapt the implementation of a given feature with a given protocol to comply with the specifications of IP PBX 107 or a specific telephony services server 109, such as a SIP server, of the environment in which IP phone 101 will participate. Sometimes, even with standard messages such as SIP REGISTER, vendors may require specific headers in order to interoperate. The CIS layer 303 may include vendor-specific telephony adapters 1504, 1507, a generic SIP telephony adapter 1505, and a generic H.323 telephony adapter 1506. It is noted that CIS layer 303 may include other adapters and that FIG. 15 is illustrative.

The native SIP/H323 protocol stack 1508, a part of CIS layer 303, provides portable protocol implementation between different operating systems and uses standard TCP/IP and standard network programming APIs to communicate with operating system services layer 302 which includes a TCP/IP protocol stack 1509 and controls platform drivers and hardware 1510.

FIG. 16 illustrates an embodiment of the present invention of a directory services architecture 1600 using software platform 300 (FIG. 3) in IP phone 101 (FIGS. 1-3 and 27). Referring to FIG. 16, in conjunction with FIGS. 1-3, directory services architecture 1600 allows an application operating on IP phone 101 to access information such as contacts and call logs in a consistent manner regardless of where the information is physically stored or managed. Architecture 1600 hides from the application changes in the location of the information, the protocol used to access the information and in the underlying OS and hardware platform.

CCCBS API 308 provides a uniform interface to an application 1601 to access call history information, phone addresses and contact information in general. This information can be stored locally in IP phone 101 or in a remote server.

CCCBS layer 304 is divided in two sub layers 1602, 1603. Sub layer 1603 implements the specific information exchange protocol and the other formats the data appropriately for application 1601 through CCCBS API 308 and transforms the application requests and data appropriately for its final repository.

If the information is stored locally, then a local data adapter 1604 in sub layer 1602 needs to read the file, decode it (XML, binary fixed size records) and present it to application layer 305. If the information is stored remotely, then a protocol is needed to exchange information between IP phone 101 and the remote repository. Sub layer 1602 includes the interfaces to access operating system services layer 302. For example, local data adapter 1604 may access call logs interface 1608 and phonebook interfaces 1609 to make available locally stored information to the application code 305 via the CCBS APIs 308.

20

LDAP is standard protocol for providing client-server access to directory services. Directory services are commonly used in IP telephony to carry out authentication, personalization and contact searching. A portable LDAP client can be implemented on IP phone 101 or exchange directory information in XML format with an external LDAP client that makes the actual connection to the repository. An LDAP adapter 1605 in sub layer 1602 uses the LDAP client to fulfill application requests and presents the information to the application. LDAP adapter 1605 interfaces with operating system services layer 302 via an LDAP client interface 1610.

An XML-RPC adapter 1606 in sub layer 1602 and interface 1610 in sub layer 1603 allow IP phone 101 to send and receive requests from a remote server in XML format. In particular, SOAP is an XML-RPC language that uses HTTP as a transport protocol and will provide IP phone 101 with the foundation to communicate with servers exposing information through web services.

Other adapters 1607 in sub layer 1602 can be included as necessary to interoperate with other sources of contact information. For example, third party IP PBXs, centrex, call mangers and softswitches can provide personal directories and call logs so that IP phone 101 does not need to use storage space locally but may use proprietary protocol to exchange the information. IP phone 101 may also want to access/synchronize contacts with devices, e.g., Pocket PC, or third party contact management software. Other adapters 1607 interface with operating system services layer 302 via other interfaces 1612.

Another important part of base services layer 304 provided by platform 300 are the Transactional Applications Delivery System (TADS) services discussed above. As stated above, the TADS is a networked system that distributes Transactional Applications (TAs) to remote VoIP agents based on user profiles associated with the agents. A TA is a relatively small hosted application that enables the user of the VoIP agent (a consumer) to complete commercial transactions with one or more vendors. The TADS also gathers TA usage information to build user profiles that enable vendors to target TAs to their customers. TADS services are coordinated through a network server maintained by the TADS service provider.

Referring to FIG. 16, in conjunction with FIGS. 1-3, operating system services layer 302 includes Real Time Operating System (RTOS) services 1613 used to interface with the low-level memory, I/O and control resources of the platform hardware 301 (hardware of IP phone 101).

FIG. 17 illustrates an embodiment of the present invention of a transactional application delivery system services architecture 1700. Referring to FIG. 17, in conjunction with FIGS. 1-3, 10 and 11, FIG. 17 further illustrates an embodiment of the present invention of how TAs in layer 5 (Domain-specific Applications) 305 are supported by software modules in layer 4 (CCCBS) 304 of software platform 300 in IP phone 101. Please find presented three examples of domain-specific hosted applications as examples, namely: preferred search 1701, local search 1702 and sponsored programming 1703. Preferred search 1701 is a series of configurable and extensible shortcuts to information on commercial services and products made available to the user by the TADS service provider. Local search application 1702 allows the consumer to browse through products and services offered by vendors local to a specific geographical region. Sponsored programming application 1703 feature advertisements selected based on usage statistics, consumer demographics and other consumer information. All three types of applications 1701-1703 can generate transactions, voice calls and other events that can be used to augment user profiles

21

A TADS protocol stack **1704** in CCCBS layer **304** implements the communication protocols needed to distribute TAs, carry out transactions, and gather TA events. A TADS transaction manager **1705** in CCCBS layer **304** uses TADS protocol stack **1704** to carry out transactions with another transaction manager at TADS server **1001**. A TADS programming manager **1706** in CCCBS layer **304** receives and manages programming information from TADS server **1001** to schedule sponsored programming and other advertisements. Application Hosting Services (AHS) **1707** provide the environment needed by third-party applications in layer **5 305** to run. A Secure Sockets Layer (SSL) module **1708** in CCCBS layer **304** provides secure transport of information between nodes of the network.

TADS client side elements **1002** services can be shared by applications targeted for a broad range of domains, therefore reusing the code that provides the services and effectively shortening the development cycle of domain-specific applications.

Application delivery system services architecture **1700** may further include RTOS services **1709** in operating system services layer **302** which is interfaced with platform drivers and hardware **1710**.

FIG. **18** illustrates an embodiment of the present invention of an application hosting services ("AHS") architecture **1800** using software platform **300** (FIG. **3**) in IP phone **101** (FIGS. **1-3** and **27**). AHS architecture **1800** may be used to facilitate the management of third-party applications operating on platform **300** (FIG. **3**) of IP phone **101** (FIGS. **1-2** and **27**). This includes, but is not limited to: searching for suitable applications on the web, downloading host-able applications to the target, loading and running applications on the target, security and protection mechanisms to protect other code and data on the target from malicious applications, and access methods to input/output resources of the IP phone **101**.

Symbolic reference checker **1805** provides security against malicious programs by making sure only the appropriate symbols are referenced from the hosted applications. This utility is used before the application is loaded into the target's memory. Another security mechanism is to have the applications run in a special mode where only some of the services offered by platform **300** are accessible. Hosted application exception handlers **1815** can protect the stability of the load by filtering exceptions based on the task that generates them, only penalizing the offending hosted application and not the whole load. Referring to FIG. **18**, disk and memory quotas and other resource usage policies may be enforced by the hosted application resource management modules **1801**, layout manager **1813**, task priority manager **1802**, memory manager **1803** and disk space manager **1804**.

Update engine **1810** provides application search services that allow the IP Phone **101** to find an appropriate hosted application, or an update to an already hosted application, on another computer system through the use of a network **2704** (FIG. **27**). Downloader/installer **1811** provides the services required to transfer hospitality applications from other computer systems to the persistent storage (FLASH) **2712** or disk init **2708** of the IP Phone **101**. Loading & execution control **1812** implements the services required to load hosted application to RAM memory **2714** and to execute or halt such applications.

Hosted application A **1806**, hosted application B **1807** and hosted application C **1808** are example hosted applications. There could be several hosted applications running at the same time on the IP phone **101** or waiting to be run. A hosted applications manager **1809** is an example hosted application used to organize and control other hosted applications **1806**,

22

**1807**, **1808**. Application Hosting Services (AHS) application programming interfaces (APIs) **1814** provide all the resources and services the hosted applications **1806**, **1807**, **1808** and **1809** use. Applications targeted for a broad range of domains can share these APIs, therefore reusing the code beneath and effectively making the development cycle shorter.

FIG. **19** illustrates an embodiment of the present invention of directory search and advertising services **1900**. Referring to FIG. **19**, directory search and advertising services **1900** constitute an example class of TADS-enabled applications and services that can be built on top of the TADS server side and client side software modules and databases. The services may be categorized according to baseline directory services **1901**, premium listing services **1902**, and advertising services **1903**. A description of the services that can be offered under each category and how these are supported by converged communications content distribution platform owner **1204** (FIG. **12**) are described below.

FIG. **20** illustrates monetizing baseline directory services **1901** (FIG. **19**), premium listing services **1902** (FIG. **19**) and advertising services **1903** (FIG. **19**) in accordance with an embodiment of the present invention.

Referring to FIGS. **19** and **20**, in conjunction with FIGS. **1-3**, **11**, **12** and **13**, baseline directory services **1901** are constructed from existing baseline subscriber merchant **2005** directory (contact information) content databases **2003** provided by content owners **2002**. Baseline directory services **1901** include all end-point views of said information displayed on the end-user terminals (IP phone **101**) and the end-user actions that can be performed on the information. These services include, but are not limited to, directory queries, query results local save, and one-touch communications.

Directory query involves the end-user invoking the local search application on the converged communications terminal (IP phone **101**) and entering the required search information (e.g., merchant category and desired location). The end-user query is handled by the client protocol engine **1121** and securely submitted to TADS server protocol engine **1102**. Server returns query results to the end-user terminal **101**, providing baseline information (including information such as merchant name, address, phone numbers, and maps) and premium listing services (see below) for all merchants that match the query specifications. Settlement manager **1302** logs all actions associated with the served transaction including, for example, the merchants actually viewed by the end-user, the merchants for which the end-user requested more information, the merchants that were actually contacted by the end-user, and the merchants for which the end-user responded to premium listing actions. Note that this close-looped environment allows the content distribution platform owner to use contextual information beyond the query search terms provided by the end-user, such as the location of the IP Phone (residence, hotel, condominium), past end-user usage patterns (preferences), and demographics to provide higher quality search results.

Query results local save involves the end-user selecting one of baseline or premium listings **1901**, **1902**, respectively, returned by a directory query and save the associated content information into a local entry in their converged communications terminal (IP phone **101**) address book. Settlement Manager **1302** logs the transaction.

One-touch communications involves the end-user selecting one of baseline **1901** or premiums **1902** listings returned by a directory query and initiates a call via the converged

23

communications infrastructure by simply selecting the "one-touch" call feature. Settlement manager **1302** logs the transaction.

Premium listing services **1902** are constructed from existing merchant directory (contact information) content databases provided by the content owners and additional information provided directly by the merchants via the web-based TADS front-end console **1101** that feeds into the converged communications content distribution platform owner **1204**. Premium listing services **1902** include, but are not limited to, top billing (priority placement) of a merchant's contact information in results provided in response to an end-user query (including multimedia content) and no-contact transactions (allows end-user to complete a transaction with the merchant without the need to generate a voice call).

Top billing (priority placement) service involves merchants using TADS front-end console **1101** to subscribe to this premium listing service. Merchants provide the converged communications content distribution platform **1204** (FIG. **12**) with contextual information required for the platform to provide merchant priority placement in the presentation of query results to end-users. The contextual information takes the form of both keyword information associated with the merchant's services and end-user demographic information that the merchant may want included in the determination of whether or not top-billing should be provided to its listing. Settlement manager **1302** logs all aspects of the transaction.

Multimedia listing services involves merchants using TADS front-end console **1101** to subscribe to this premium listing service. Merchants provide the converged communications content distribution platform **1204** with contextual information required for the platform to provide merchant priority placement in the presentation of query results to end-users as for the top billing service and provide additional multimedia listing to be used in accordance to the type of multimedia listing selected by the merchant. For example, the merchant may opt for half-screen or quarter-screen images to be used in presenting its listing and for specific multimedia presentations to be presented to the end-user if the merchant's listing is selected by the end-user. Settlement manager **1302** logs all aspects of the transaction.

No contact call services involve merchants using TADS front-end console **1101** to enable no contact call service functionality for its premium listings. If an end-user selects a listing with no-contact call service functionality, the TADS server **1001** manages the request by prompting the end-user to provide, via the converged communication terminals (IP phone **101**) input interface, to provide all required information to complete a transaction according to the vendor requirements. Information is then transferred to the merchant without further end-user intervention (e.g., via e-mail or synthesized voice message). Upon receipt of the request the merchant takes the appropriate action. For example, a premium pizzeria's listing could prompt the user to select amongst a variety of offers. The user would provide the required information pertaining to the offers (for example, pizza size, toppings, crust, etc.) and the converged communications content distribution platform owner **1204** would relay the information to the merchant. There would be no need for the end-user to provide address, phone number, and payment information since all of this information would already be available to the converged communications content distribution platform owner **1204** through its relationship with the converged communications infrastructure service provider **2007** and content distribution platform owner **1204**. Settlement manager **1302** logs all aspects of the transaction.

24

Advertising services **1903** are constructed from existing merchant directory (contact information) content databases **2003** provided by the content owners **2002** and additional information provided directly by the premium subscriber merchants **2006** via the web-based TADS front-end console **1101** that feeds into the converged communications content distribution platform owner **1204**. Merchants **1201** may define distribution and level of exposure for an advertisement using criteria such as user demographics, geographical or organizational boundaries and buying history. Advertising services include, but are not limited to, the distribution of wall-paper (digital image rendered on the converged communications terminal's display) and video advertisements that can be displayed on the end-user terminal (IP phone **101**) based on specific criteria, including demographics-based algorithms. In all cases the advertisements would retain a portion of end-user's **1203** terminal display. End-user **1203** would have the option of receiving more information on the advertising service or product by simply selecting it via the terminal's input interface. These advertisements would be scheduled and targeted according to the merchant's instructions. Settlement manager **1302** logs all aspects of the transaction.

FIG. **21** is a flowchart of a method **2100** for performing contextual searches, as discussed above, in accordance with an embodiment of the present invention. Referring to FIG. **21**, in conjunction with FIGS. **1-3**, **11**, **13**, **17** and **19**, in step **2101**, IP phone **101** receives a command to perform a contextual search as well as the search query from the end-user. IP phone **101** receives such a command in response to the end-user invoking local search application **1702** on the converged communications terminal (IP phone **101**) and entering the required search information (e.g., merchant category and desired location). In step **2102**, the end-user query is handled by client protocol engine **1121** and securely submitted to TADS application server **108**. It is implied that a remote application server **108** will receive the criteria for the contextual search, produce results based on them and send the results back to the IP phone **101** using a TADS server protocol engine **1102**. In step **2103**, IP phone **101** receives the query results from application server **108** where the query results provide baseline directory services **1901** (including information such as merchant name, address, phone numbers, and maps) and premium listing services **1902** for all merchants that match the query specifications. In step **2104**, settlement manager **1304** logs all actions associated with the served transaction including, for example, the merchants actually viewed by the end-user, the merchants for which the end-user requested more information, the merchants that were actually contacted by the end-user, and the merchants for which the end-user responded to premium listing actions. In step **2105**, the end-user selects either baseline or premium services **1901**, **1902**, respectively, for the merchant of interest and proceeds according to the nature of the listing.

It is noted that method **2100** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **2100** may be executed in a different order than presented and that the order presented in the discussion of FIG. **21** is illustrative. It is further noted that certain steps in method **2100** may be executed in a substantially simultaneous manner.

FIG. **22** is a flowchart of a method **2200** for performing a local save, as discussed above, in accordance with an embodiment of the present invention. Referring to FIG. **22**, in conjunction with FIGS. **1-3**, **11**, **13** and **16**, in step **2201**, the end-user selects a query result. In step **2202**, the content information associated with the query result is stored as a

25

local entry in IP phone's **101** phonebook interface **1609**. In step **2203**, settlement manager **1302** logs all actions associated with the served transaction. For example, the end-user searches for a service establishment by providing information such as the type of service establishment and the location and submitting the query to phonebook interface **1609**. The server processes the query and returns various options to the end-user. For each option, the merchant's name and relevant contact information is provided, as is the option to save the merchant's information into the end-users' IP phone local directory. The end-user, by selecting the local save option for a merchant of interest, will save the merchant's contact information into the IP phone's local (on-phone) phonebook interface **1609**.

It is noted that method **2200** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **2200** may be executed in a different order than presented and that the order presented in the discussion of FIG. **22** is illustrative. It is further noted that certain steps in method **2200** may be executed in a substantially simultaneous manner.

FIG. **23** is a flowchart of a method **2300** for performing one-touch calls, as discussed above, in accordance with an embodiment of the present invention. Referring to FIG. **23**, in conjunction with FIGS. **1-3**, **11** and **13**, in step **2301**, the end-user selects the query's result "one-touch" feature (example of a feature that can be part of premium listing services **1902**). In step **2302**, IP phone **101** initiates a call via the corresponding infrastructure, e.g., wireless network **114**, voice network **103**, data network **102**. In step **2303**, settlement manager **13024** logs all actions associated with the served transaction.

It is noted that method **2300** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **2300** may be executed in a different order than presented and that the order presented in the discussion of FIG. **23** is illustrative. It is further noted that certain steps in method **2300** may be executed in a substantially simultaneous manner.

FIG. **24** is a flowchart of a method **2400** for scheduling advertisements, as discussed above, in accordance with an embodiment of the present invention. Referring to FIG. **24**, in conjunction with FIGS. **1-3**, **11**, **13** and **19**, in step **2401**, merchants use front-end console **1101** to provide content for advertising services. For example, merchants may use TADS front-end console **1101** to subscribe to premium listing services **1902**. In step **2402**, merchants define distribution and level of exposure for advertisements. For example, merchants provide TADS with contextual information required for the platform to provide merchant priority placement in the presentation of query results to end-users. The contextual information takes the form of both keyword information associated with the merchant's services and end-user demographic information that the merchant may want included in the determination of whether or not top-billing should be provided to its listing. Further, merchants provide TADS with contextual information required for platform **300** to provide merchant priority placement in the presentation of query results to end-users as for premium listing services **1902** and provide additional multimedia material to be used in accordance to the type of multimedia material to be used in accordance to the type of multimedia listing selected by the merchant. For example, the merchant may opt for half-screen or quarter-screen images to be used in presenting its listing and for specific multimedia presentations to be presented to the end-user if the merchant's listing is selected by the end-user. In

26

step **2403**, settlement manager **1302** logs all actions associated with the served transaction.

It is noted that method **2400** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **2400** may be executed in a different order presented and that the order presented in the discussion of FIG. **24** is illustrative. It is further noted that certain steps in method **2400** may be executed in a substantially simultaneous manner.

FIG. **25** is a flowchart of a method **2500** to enable no contact call service functionality for its premium listings, as discussed above, in accordance with an embodiment of the present invention. Referring to FIG. **25**, in conjunction with FIGS. **1-3**, **11**, **13**, **19** and **20**, in step **2501**, merchants use front-end console **1101** to enable the no contact call service. In step **2502**, the end-user selects a query result with the no contact call service functionality. In step **2503**, TADS server **1001** manages the request by prompting the end-user to provide, via the converged communication terminal's input interface (interface to IP phone **101**), to provide all required information to complete a transaction according to the vendor's requirements. In step **2504**, the information is then transferred to the merchant without further end-user intervention, e.g., e-mail or synthesized voice message. In step **2505**, upon receipt of the request, the merchant takes the appropriate action. For example, a premium pizzeria's listing could prompt the user to select amongst a variety of offers. The user would provide the required information pertaining to the offers, e.g., pizza size, toppings, crust, and converged communications content distribution platform owner **2001** would relay the information to the merchant. There would be no need for the end-user to provide an address, a phone number and payment information since all of this information would already be available to converged communications content distribution platform owner **2001** through its relationship with the converged communications infrastructure service provider customer database that is part of the service provider's communication infrastructure **2007**. In step **2506**, settlement manager **1302** logs all actions associated with the served transaction. In step **2507**, merchant performs the service.

It is noted that method **2500** may include other and/or additional steps that, for clarity, are not depicted. It is further noted that method **2500** may be executed in a different order than presented and that the order presented in the discussion of FIG. **25** is illustrative. It is further noted that certain steps in method **2500** may be executed in a substantially simultaneous manner.

FIG. **26** is an embodiment of the present invention, illustrative of a domain-specific application for the enterprise environment, of the interaction between IP phone **101** and a voting application server **2601** used in implementing a voting booth application. Referring to FIG. **26**, in conjunction with FIGS. **1-3**, a voting booth application makes it possible to hold voting sessions on an arbitrary number of issues with an arbitrary number of voters. A client application hosted by platform **300** consults with a central server to get the information to be voted on and presents it to the user via a voting client user interface **2610**. The user can choose yes, no, or abstain on each issue included in the voting session. When the user has finished making selections, the votes are sent to server **2601**, which in turn saves all of them into a database **2606**. Several reports can be made with the data using the normal DBMS methods.

FIG. **26** illustrates client and server parts of the application and the data path between its cooperating modules. Client and server entities **101**, **2601**, respectively, communicate with each other using their voting communication protocol mod-

27

ules **2602**, **2603**, respectively. Voting session coordinator module **2604** controls voting sessions with all clients through their voting control logic module **2605** and aggregates vote information into database **2606** using a database exporter module **2607**. A web server **2608** then builds reports from the database on demand. A voting session viewing module **2609** lets an administrator supervise the voting process.

Although the method, computer program product and system are described in connection with several embodiments, it is not intended to be limited to the specific forms set forth herein, but on the contrary, it is intended to cover such alternatives, modifications and equivalents, as can be reasonably included within the spirit and scope of the invention as defined by the appended claims.

What is claimed is:

**1**. A system, comprising:

an Internet Protocol (IP) phone coupled to a server,

wherein said IP phone is configured to receive contextual information from said server, wherein said IP phone comprises:

a memory unit operable for storing a computer program for performing contextual searches;

a processor coupled to said memory unit, wherein said processor, responsive to said computer program, comprises:

circuitry for receiving a command to perform a contextual search;

circuitry for receiving search criteria;

circuitry for submitting said search criteria to said server; and

circuitry for receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list;

wherein a user of said IP phone completes a transaction with at least one of said merchants listed without the need to generate a voice call;

wherein said information received by said user of said IP phone comprises a variety of offers, wherein said user selects one of said variety of offers associated with said one of said merchants listed, wherein said selected offer is transmitted to said one of said merchants listed electronically; and

wherein said user's contact and payment information is not transmitted to said one of said merchants listed, wherein said user's contact and payment information is available to said one of said merchants listed.

**2**. The system as recited in claim **1**, wherein said server is configured to log actions of a user associated with viewing said list of merchants and contacting said merchants in said list.

**3**. The system as recited in claim **1**, wherein said search criteria comprises a location and a type of service establishment.

**4**. The system as recited in claim **1**, wherein said information regarding each of said merchants in said list comprises a name and contact information.

**5**. The system as recited in claim **4**, wherein said processor further comprises:

circuitry for storing said information on one of said merchants in said list selected by a user of said IP phone in a directory in said IP phone.

**6**. The system as recited in claim **4**, wherein said contact information comprises a telephone number, wherein said processor further comprises:

circuitry for receiving a selection of said telephone number associated with one of said merchants in said list selected by a user of said IP phone; and

28

circuitry for initiating a telephone call to said selected merchant via one of a wireless network, a voice network, a public switched telephone network and a data network.

**7**. The system as recited in claim **1**, wherein said merchants in said list of merchants select one of a plurality of advertising services, wherein each of said plurality of advertising services provides a different level of advertising exposure.

**8**. The system as recited in claim **7**, wherein said different levels of advertising exposure comprise a different amount of contextual information presented to a user of said IP phone.

**9**. A method for performing contextual searches on an Internet Phone (IP) phone comprising the steps of:

receiving a command to perform a contextual search;

receiving search criteria from a user of said IP phone;

submitting said search criteria to a server coupled to said IP phone; and

receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list;

wherein said information received by said user comprises a variety of offers, wherein said user selects one of said variety of offers associated with said one of said merchants listed, wherein said selected offer is transmitted to said one of said merchants listed electronically; and

wherein said user's contact and payment information is not transmitted to said one of said merchants listed, wherein said user's contact and payment information is available to said one of said merchants listed.

**10**. The method as recited in claim **9** further comprising the step of:

logging actions of said user associated with viewing said list of merchants and contacting said merchants in said list.

**11**. The method as recited in claim **9**, wherein said search criteria comprises a location and a type of service establishment.

**12**. The method as recited in claim **9**, wherein said information regarding each of said merchants in said list comprises a name and contact information.

**13**. The method as recited in claim **12** further comprising the step of:

storing said information on one of said merchants in said list selected by said user in a directory in said IP phone.

**14**. The method as recited in claim **12**, wherein said contact information comprises a telephone number, wherein the method further comprises the steps of:

receiving a selection of said telephone number associated with one of said merchants in said list selected by said user; and

initiating a telephone call to said selected merchant via one of a wireless network, a voice network, a public switched telephone network and a data network.

**15**. The method as recited in claim **9**, wherein said merchants in said list of merchants select one of a plurality of advertising services, wherein each of said plurality of advertising services provides a different level of advertising exposure.

**16**. The method as recited in claim **15**, wherein said different levels of advertising exposure comprise a different amount of contextual information presented to said user.

**17**. A tangible computer readable medium encoded with computer program for performing contextual searches on an Internet Phone (IP) phone comprising the steps of:

receiving a command to perform a contextual search;

receiving search criteria from a user of said IP phone;

submitting said search criteria to a server coupled to said IP phone; and

US 7,525,955 B2

<table>
<tr><td>29</td><td>30</td></tr>
</table>

receiving from said server a list of merchants matching said search criteria and information regarding each of said merchants in said list;

wherein said user completes a transaction with at least one of said merchants listed without the need to generate a voice call;

wherein said information received by said user comprises a variety of offers, wherein said user selects one of said variety of offers associated with said one of said merchants listed, wherein said selected offer is transmitted to said one of said merchants listed electronically; and

wherein said user's contact and payment information is not transmitted to said one of said merchants listed, wherein said user's contact and payment information is available to said one of said merchants listed.

**18**. A tangible computer readable medium encoded with computer program as recited in claim **17**, wherein said server is configured to log actions of a user associated with viewing said list of merchants and contacting said merchants in said list.

**19**. A tangible computer readable medium encoded with computer program as recited in claim **17**, wherein said search criteria comprises a location and a type of service establishment.

**20**. A tangible computer readable medium encoded with computer program as recited in claim **17**, wherein said information regarding each of said merchants in said list comprises a name and contact information. as recited in claim **17**,

wherein said information regarding each of said merchants in said list comprises a name and contact information.

**21**. A tangible computer readable medium encoded with computer program as recited in claim **20** further comprising the programming step of:

storing said information on one of said merchants in said list selected by said user in a directory in said IP phone.

**22**. A tangible computer readable medium encoded with program as recited in claim **20**, wherein said contact information comprises a telephone number, wherein the computer program further comprises the programming steps of:

receiving a selection of said telephone number associated with one of said merchants in said list selected by said user; and

initiating a telephone call to said selected merchant via one of a wireless network, a voice network, a public switched telephone network and a data network.

**23**. A tangible computer readable medium encoded with computer program as recited in claim **17**, wherein said merchants in said list of merchants select one of a plurality of advertising services, wherein each of said plurality of advertising services provides a different level of advertising exposure.

**24**. A tangible computer readable medium encoded with computer program as recited in claim **23**, wherein said different level of advertising exposure comprises a different amount of contextual information presented to said user.

\*   \*   \*   \*   \*

# CIVIL COVER SHEET

JS 44 (Rev. 12/07)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
H-W TECHNOLOGY, L.C.

**DEFENDANTS**
APPLE, INC. ET AL

**(b)** County of Residence of First Listed Plaintiff   LUBBOCK
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Santa Clara
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Winston O. Huff, Navarro Huff, PLLC, 302 N. Market Street, Suite 450, Dallas, TX, 75202, 214-749-1220

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☒ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
Title 35, USC; 35 USC Sec 271 et seq; 28 USC Secs 1331 and 1338(a)
Brief description of cause:
Suit for patent infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE ____   DOCKET NUMBER ____

DATE
03/30/2011

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # ____   AMOUNT ____   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____

| Print | Save As... | Export as FDF | Retrieve FDF File | Reset |

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.     (a) Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence.  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys.  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.     Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.

United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; federal question actions take precedence over diversity cases.)

**III.     Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.     Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.     Origin.**  Place an "X" in one of the seven boxes.

Original Proceedings.  (1) Cases which originate in the United States district courts.

Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.

Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.

Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.

Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.  When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment.  (7) Check this box for an appeal from a magistrate judge's decision.

**VI.     Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity**.      Example:      U.S. Civil Statute: 47 USC 553
                                                              Brief Description: Unauthorized reception of cable service

**VII.     Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand.  In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.     Related Cases.**  This section of the JS 44 is used to reference related pending cases if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**.  Date and sign the civil cover sheet.